UNITED STATES of America ex rel.
Herman E. STOUFFER,
Petitioner,

v.

COMMONWEALTH OF PENNSYL-
VANIA, Respondent.

No. 1540.

United States District Court,
M. D. Pennsylvania.

May 1, 1974.

As Amended May 8, 1974.

Jerome T. Foerster, Harrisburg, Pa., for petitioner.

John Walker, Dist. Atty., Chambersburg, Pa., for respondent.

OPINION

MUIR, District Judge.

I. FACTS

Petitioner seeks a writ of habeas corpus after exhausting his remedies in the Pennsylvania courts.[1] The basis for the

---

1. Commonwealth v. Stouffer, 225 Pa.Super. 30, 307 A.2d 415 (1973); see powerful dissent of Judge Hoffman, joined in by Judges Spalding and Spaeth; allocatur denied, No. 91, Sept. 21, 1973.

requested relief both in the state tribunals and here is (1) the refusal of the County Court judge to grant a continuance when the court-appointed Public Defender, Blake Martin, stated that he was unprepared for trial and (2) prejudicial newspaper publicity before and during the trial. A writ of habeas corpus will be granted.

Herman Stouffer, the Petitioner, was charged in rural Franklin County, Pennsylvania, with uttering forged instruments. He was first informed of his right to counsel on October 26, 1966 when he appeared before a Justice of the Peace, although the Petitioner told this Court that it was not until April, 1967 when he went to trial in Maryland that he first learned of his right to free counsel. He was arraigned on January 27, 1967. The case was first called to trial in February, 1967 and postponed until the May term because Stouffer did not have counsel. Stouffer did not have an attorney when his case was again called on May 1, 1967 and he requested further opportunity to obtain one. When Stouffer appeared before the court in the afternoon of the same day he stated that he still had not been able to secure counsel. The case was continued until May 5, 1967 and Stouffer once again appeared in Court without representation. At that time the Public Defender of Franklin County was appointed to represent him. A jury was chosen that day and the trial was set for May 25, 1967 after a request for a continuance to the next term of court was rejected. On no occasion did Stouffer ask the trial judge to appoint a lawyer for him.

At the habeas corpus hearing Mr. Thomas Maxwell testified that he was the attorney who represented Stouffer in Maryland in a case arising out of the same alleged fraudulent scheme and that he tried to help Stouffer obtain a lawyer in 1966 for his Pennsylvania case but was unsuccessful. The witness, who is not a member of the Pennsylvania bar, could not state why he did not associate local Pennsylvania counsel while remaining chief trial counsel. Stouffer testified that the Chambersburg[2] attorneys he sought to employ refused to accept his case, some claiming conflicts of interest because of their association with banks in the area involved as complainants against Stouffer and others fearing a detrimental effect on their practice because of local hostility to Stouffer. Other attorneys did not respond to Stouffer's telephone calls.

Martin testified that it was impossible for him to prepare a proper defense for Stouffer by May 25. Stouffer had extremely complex business affairs. His two corporations and his own individual business were in bankruptcy. According to Martin, much of the defense was to have come from documents, some of which were not readily obtainable because they were in the hands of the trustees in bankruptcy. Subpoenas were issued by Martin on May 22 or 23, 1967, for Stouffer's records and were returned on the first day of the trial. The defense never did have the time to go through the boxes of records, though counsel could not recall at petitioner's hearing whether Stouffer directed him to any particular document pertinent to his case. Martin further stated at the habeas corpus hearing that he had been engaged in continuous trials for a period of two weeks after May 5 and so informed the County Court. Martin was the County's first Public Defender and had no staff, either legal or secretarial. Stouffer's trial was to be his first as Public Defender. On May 25, the Public Defender once again informed the Court that he was not prepared for trial,[3] but the trial proceeded nevertheless. Stouffer was convicted.

Newspaper accounts of Stouffer's trial were carried in three newspapers of local circulation: *Public Opinion*, a daily newspaper published in Chambers-

---

2. County seat of Franklin County, Pennsylvania, and the location of the trial.

3. See N.T. (Franklin County trial) 5.

burg, Pennsylvania; *Echo Pilot,* a weekly newspaper published in Green Castle, Pennsylvania; and the *Record Herald-Morning Herald,* a daily newspaper published in Waynesboro, Pennsylvania.

A front page article appeared in the *Public Opinion* on April 27, 1967 with the headline: "Man Facing Trial Here Convicted in Maryland." The article reported that Stouffer was convicted of "related crimes" in Maryland after jury deliberation of "less than five minutes." The article also said: "It has been reported that one bank alone, the Citizens National Bank of Waynesboro, had been duped out of several hundred thousand dollars through its transactions with Stouffer."

An article appearing in the *Public Opinion* on May 5 reported that Stouffer, once a "prosperous . . . developer" told the Court that he was "indigent" and "was afforded the services of the county's public defender." This information was repeated later. Accounts in the *Public Opinion* and the *Record Herald* a week before the jury was to hear the Stouffer case reported on his motion for a change of venue in great detail. Several of these articles referred to charges against Stouffer in other jurisdictions stemming from the same transaction which was the basis of the Franklin County prosecution. During the two-day trial newspaper accounts appeared both in the *Public Opinion* and the *Morning Herald.* One of these made mention of similar charges lodged against Stouffer in other places. While not representing unbiased journalism, most of the newspaper stories appear to have been factual. The *Public Opinion* articles of April 27, 1967 and May 5, 1967 are the most prejudicial.

On the date the jury was picked, the judge instructed its members not to discuss the case with anyone or permit anyone to discuss the case with them. They were also warned not to read anything in the newspapers concerning the Stouffer trial. On May 19, 1967, a hearing on a motion for a change of venue was had. On the date of the trial itself, a renewed motion for a change of venue was denied. Mr. Martin then asked the Court to question the jury concerning the pre-trial publicity. The presiding judge asked the jurors *en banc* whether any one of them had heard of or read anything about the case since selection and whether anyone had spoken with them about the case. No one replied affirmatively.

Chambersburg had a population of approximately 17,000 in 1967. The entire population of Franklin County was approximately 90,000.

We approach with caution, as we must, the question of whether the Franklin County Court of Common Pleas, the Pennsylvania Superior Court and the Pennsylvania Supreme Court all failed to appreciate and enforce Petitioner's federal constitutional rights. My own view is that our judicial system is very much awry when a U. S. District Judge has the power to reverse a decision of the Superior Court or Supreme Court of Pennsylvania, but the power does exist. Irvin v. Ind., 353 U.S. 948, 77 S.Ct. 827, 1 L.Ed.2d 857 (1957). See United States ex rel. Booker v. Johnson, 488 F.2d 229, 233–234 (3d Cir. 1973). Correlative to the power is the duty to use it, however distasteful such exercise may be to the holder of the power.

## II. Effective Representation

It is apparent that Petitioner did not wish to face his impending trial in Pennsylvania in 1967. I am not convinced that either Stouffer or his Maryland attorney, Thomas Maxwell, made a full effort to obtain representation for Petitioner in his Pennsylvania proceedings. Even given the dubious assumption that from April, 1967 until May 5, 1967, Petitioner did attempt to secure the services of a lawyer, we are faced with the question of whether the May 5 appointment of Martin with a May 25 trial date denied Stouffer his right to effective representation of counsel under the Sixth Amendment to the federal Constitution.

In determining this issue, Moore v. United States, 432 F.2d 730 (3d Cir. 1970), is controlling. The Moore decision abandoned the presumption of ineffective counsel in so-called late appointment cases for a more flexible set of criteria. These criteria include,

(1) the gravity of the charge,

(2) the experience of the appointed counsel,

(3) the extent of his knowledge and participation in similar cases,

(4) his opportunity for preparation, and

(5) what appointed counsel may have been told by the defendant which may reduce the area of necessary preparation.

An examination of each of these elements will help to determine whether counsel had an opportunity for "careful investigation" and "thoughtful analysis." Moore, at p. 735.

The charge in Stouffer's case was serious and Maryland trial counsel was an experienced criminal lawyer. We do not know of Mr. Martin's experience in similar cases. We accept as true the testimony at the habeas corpus hearing that Martin had two weeks of trials immediately prior to petitioner's trial. He thus had only three days plus weekend time to prepare Stouffer's defense.

The testimony at the hearing with respect to what Petitioner told Martin which may have reduced the area of necessary preparation was vague indeed. Stouffer's defense at trial was that he did not possess the requisite criminal intent to be guilty of the crimes with which he was charged. Martin spoke to Petitioner four or five times before the trial and could not remember whether the Petitioner suggested calling any witnesses other than those Martin already scheduled.

The documents which arrived on May 25 were subpoenaed at Petitioner's request but Martin asserted that Petitioner did not tell him precisely where in the records his defense would be. Some of the records dealing with Stouffer's defense were offered into evidence at trial, although several of these were excluded for evidentiary reasons. Martin felt that without solid documentary evidence he could not have prepared a better defense even with a much longer time for trial preparation.

We note that Stouffer had already faced trial in Maryland on similar charges and had been represented by able counsel so that a great deal more than three days had in fact been spent in the development of Stouffer's defense. See Conner v. DeRamus, 374 F.Supp. 515, (1974).

In light of the foregoing, I cannot say that Herman Stouffer received ineffective representation at trial.

### III. Publicity

The Third Circuit and the Pennsylvania Supreme Court have both recently written comprehensive opinions on the subject of pre-trial publicity. United States ex rel. Doggett v. Yeager, 472 F. 2d 229 (3d Cir. 1973) and Commonwealth v. Pierce, 451 Pa. 190, 303 A.2d 209 (1973). The Doggett facts were that petitioner, accused of bank robbery, was tried in a rural community of 12,713 residents amid much newspaper publicity concerning petitioner's alleged pre-trial escape attempt and change in plea from "guilty" to "not guilty." The trial court questioned the jurors *en banc* to determine if the petitioner had been prejudiced by the articles. Four of the jurors had heard about or read one of the articles during the trial. The judge, rejecting a joint defense and prosecution suggestion, refused to inquire of the jurors whether there had been any discussion among themselves about the particular article. The trial court had admonished the jury members not to read anything about the case and, as the Court of Appeals observed, the trial court's order was evidently disregarded. The judge also refused to question the jurors at a later point in the trial when Doggett's counsel reported to the Court that he believed several members of the jury

might have seen an article about the case in a newspaper lying on a counter in a luncheonette patronized by the jurors.

According to *Doggett,* at p. 238, proof of actual prejudice to the Defendant need not be shown. In the Stouffer case, the trial judge was in error when he required that Stouffer demonstrate "actual prejudice" from the articles. The Circuit Court, in granting Doggett's habeas corpus petition, quoted with approval the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press. It recommended that when there is an issue of prejudicial publicity involved in a case, each prospective juror should be examined outside the presence of other jurors with respect to his exposure to the publicity.[4]

The requirement that in cases involving prejudicial publicity each juror be examined outside the presence of other jurors was enunciated in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

Judge Gibbons concluded that "If the information was prejudicial and the dissemination widespread in the community from which the jury was drawn" then the defendant is entitled to judicial relief. Doggett at p. 238. In Rideau v. Louisiana, 373 U.S. 723, 726, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), the defendant's confession had been widely televised but it was not necessary to the result of that decision which granted defendant relief that any juror actually saw the telecast. It must only be *probable* that prejudice resulted to the defendant. Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).

 In petitioner's case, it is probable that the jurors heard or read newspaper accounts which contained material inadmissible in a criminal trial and therefore prejudicial. The judge applied an incorrect legal standard when he required Stouffer to demonstrate actual

prejudice and failed to examine the jurors in the manner required by law.

The Court is not prepared to declare that the federal constitutional error involved herein was harmless. See United States ex rel. Mealey v. Delaware, 489 F.2d 993, p. 995 (3d Cir., filed January 2, 1974), and United States ex rel. Doggett v. Yeager at p. 236.

The primary fault here is with the newspapers which engaged in such excesses as to deny Petitioner a fair trial.

An appropriate order will be entered.

4. Tentative Draft, December 1966 § 3.4(a). Unchanged in final draft approved by House of Delegates, February 19, 1968.