THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLYDE GUNN, Defendant-Appellant.

(Nos. 57431, 59220 cons.;

First District (2nd Division)—June 25, 1974.

Paul Bradley and Gordon H. Berry, both of the State Appellate Defenders Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

Defendant, Clyde Gunn, was tried before a jury for the offense of murder of Willie Butler in violation of section 9—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—1). The jury returned a verdict of guilty, the court entered judgment thereon, and sentenced defendant to a term of not less than 25 years nor more than 60 years in the penitentiary. Defendant appealed, Appellate Court General No. 59220. Subsequent to the murder conviction, defendant filed a post-conviction petition, which was dismissed by the trial court without an evidentiary hearing after arguments of counsel. Defendant appealed from this order, Appellate Court General No. 57431. Defendant's direct appeal and his appeal from the order denying post-conviction relief have been consolidated for review.

### I.

We will first consider defendant's direct appeal. He contends (1) that the trial court erred in refusing to declare a mistrial when, during the course of the trial, articles appeared in certain Chicago newspapers relative to an attempt escape from the Cook County jail, in which articles defendant's name was mentioned; (2) that the trial court erred in admitting evidence of another crime; and (3) that defendant was deprived of equal protection of the law because, since he was 17 years old at the time of the alleged offense, he had to be prosecuted as a male adult, whereas a similarly situated female of the same age could be treated as a juvenile offender.

Defendant filed a motion to suppress any statements, admissions, or confessions made by him. After the hearing of evidence, the trial court stated that in its opinion the statements, admissions, and confession were freely given by defendant and, therefore, the motion to suppress was denied.

At the trial, Jessie Smith testified that the deceased (Willie Butler), together with Willie's brother Cornelius, Thomas Griffin, Jimmie D.

Smith, Lucius Washington, and himself were on their way by automobile to the Twilight Tavern at 45th and Wentworth, Chicago, Illinois, after having worked the 4 P.M. to midnight shift at the Adolph Plating Company. Shortly after midnight they parked the automobile on Wentworth Avenue, about a block north of the tavern, and were walking south when they were met by two men going north. Defendant grabbed Jessie Smith from behind and struck him on the head with the barrel of an automatic pistol. He pulled Smith into a vacant lot where, at gunpoint, defendant took Smith's wallet, pointed the pistol at Smith's head and pulled the trigger three times, but the gun did not fire.

Cornelius Butler, brother of the deceased, testified that, when defendant grabbed Jessie Smith, defendant's companion (Gregory Taylor) fired two shots, one of which hit his brother; that he ran when he heard the shots; and that, when he returned, he saw that his brother was dead. After the shooting, defendant and Taylor jumped over a fence and fled.

David Henson, a Chicago police officer, testified that, on 23 June 1967 at about 8 A.M., he arrested defendant at 4500 S. Wentworth Avenue, Chicago; that defendant was standing at the corner and fitted the description of a person wanted for murder; that he asked defendant to stop and come to the squad car, but that defendant turned and ran north in an alley off of Wentworth; and that he caught defendant and took him to the police station.

John Boyle, another Chicago police officer, testified that he interviewed defendant at the police station on 23 June 1967; that, after defendant had been advised as to his constitutional rights, defendant gave an oral statement which was subsequently reduced to writing and signed by defendant in the presence of an assistant State's attorney.

In the statement defendant said that, about 10 P.M. on 22 June 1967, he and Gregory Taylor stole a car; that they drove around for approximately two hours and then parked the car on 45th Street near Princeton (Princeton is 300 West, and Wentworth is 200 West); that they went into the alley at 4400 South Wells Street, where Taylor took a jacket from in back of a garbage can; and that, as they walked back toward the car, Taylor pulled a sawed-off shotgun from underneath his coat and handed defendant an automatic pistol. Defendant further stated that, when he and Taylor were walking southbound in the middle of the 4400 block of Wentworth Avenue, they saw six men get out a car and walk toward the Twilight Tavern; that Taylor grabbed one of the men who was walking in the rear of the six and pulled him backwards and defendant then grabbed him; that defendant pulled the man into a vacant lot and was fighting with him; that at the time defendant heard two shots from the shotgun; and that Taylor ran into the vacant lot where

defendant was fighting with the man and said, "I had to shoot one of them."

In the statement, defendant further stated that he and Taylor ran through a vacant lot and came out on Wells Street where he met a woman on the street (one River Lee Bully) and told her "this is a stick-up" and tried to grab her purse; that the woman resisted and finally he grabbed her purse from her hand; that another woman came out of one of the houses on Wells Street and started screaming; that Taylor aimed the shotgun at her and shot one time, striking the woman in the face. Defendant said he and Taylor ran to the car which was parked on 45th Street near Princeton; that Taylor told defendant to get into the car and wait; that Taylor took the automatic pistol from defendant and went into the alley on Wells Street; that he came back in a few minutes without the guns. Defendant said that Taylor got in behind the wheel but could not start the car; that about this time the police were arriving on the scene; that Taylor jumped out of the car and started running and the police officers pursued him while defendant remained in the car; that, after the police left, defendant got out of the car and went in a different direction; that he went over to his grandmother's house, and, on the next morning at approximately 9 A.M., he returned to 45th and Wentworth; that he lived at 4462 Wentworth; and that he was standing on the corner when the police squad pulled up and placed him under arrest.

The written statement of defendant was read into evidence by an assistant State's attorney and exhibited to the jury.

At the trial defendant testified that on 22 June 1967 he worked from 6 A.M. to 3:30 P.M. at the Swift Lamb Sales and then went home; that about 11 P.M. that night he went to a park where he played basketball; that he left the park with Palmer Grimes about 12:30 A.M. on 23 June 1967; that he went to 47th and Calumet where he was approached by a woman who asked him for a date; that he went to her house in the middle of the block; that he took out $20 and she grabbed it; and that, when he tried to take it back, she cut him with a straight razor on the right wrist. Defendant said he left the house and walked to 47th and South Park and rinsed off his hand in a fountain; that he flagged down a paddy wagon; and that Police Officer Brumfield, the driver of the paddy wagon, took him to the Provident Hospital.

Defendant also testified that, after leaving the hospital, he spotted the woman and caught her; that they all went back to the hospital to treat the woman for a bruised knee; that then they went to the police station where he and the woman were questioned. Defendant also stated that he was released from the police station at about 8 A.M. in the morning

and went home; and that he then left the house and went to the corner where two police officers picked him up on the corner and put him in a paddy wagon. Defendant said River Lee Bully was standing at the squadrol; that the police officers drove to the "stockyard" where some officers beat him; and that then they took him to the police station. Defendant further testified that the statement was given under duress; that the statement was not correct in relating the events connected with the robbery and murder; that he had not been with Gregory Taylor on 22 or 23 June 1967; and that he did not "attempt to rob Jessie Smith and others on 45th and Wentworth" or River Lee Bully.

Police Officer Brumfield, a witness for the defense, testified that about 1 A.M. on 23 June 1967 he was on patrol in a squadrol when defendant stopped him at 47th and Calumet and said he had been attacked by a woman who took $20 from him; that defendant had a sharp incision across one arm which was bleeding slightly; that defendant was taken to the Provident Hospital for treatment; that he and defendant returned to 4640 Calumet where the defendant saw and caught the woman and brought her back to the squadrol and said she was the one who took his money and cut him; that they took her to Provident Hospital for a bruise on her knee; and that then they all went back to the police station where he was instructed to arrest both parties, one for prostitution and the other for patronizing a prostitute.

On rebuttal, Police Officers Crescenzo, John Boyle, David Henson, and assistant State's attorney Gertie testified as to the voluntariness of defendant's statement. Also, George Evans testified that he was the office manager of Swift Lamb Sales, that the last date defendant had worked for Swift Lamb Sales was 19 May 1967, and that defendant did not work for the company on 22 June 1967.

It was stipulated that defendant was 19 years of age at time of trial.

Defendant argues he was prejudiced in the eyes of the jurors because of certain articles which appeared in the *Chicago Tribune* and the *Chicago Sun-Times* on the morning of the second day of trial. The articles covered an attempted escape by five prisoners who were housed in a security section of the Cook County Jail. According to the articles, the plan launched by one Gene Lewis and four other prisoners was to overpower the guards and hold them hostage to bargain for the prisoners' release. The plan, although ultimately unsuccessful, was attempted on the afternoon of 25 March 1969, when defendant was being returned to his cell after the adjournment of his trial for the day. Defendant's only connection with the incident was that he happened to be the prisoner who was in the custody of the two guards who were attacked when they

opened the door to the cellblock. Counsel for defendant conceded that the only reference to defendant in the *Chicago Tribune* of 26 March 1969 was:

> "Two more guards, James E. Hatcher and John Pearson, arrived with the prisoner Clyde Gunn, returning him from a court appearance in the Criminal Court's Building. When Hatcher opened the door to the maximum security section, Lewis grabbed him and struck him on the head with a length of chain."

And that the only mention of defendant in the *Chicago Sun-Times* article was:

> "Lewis planned apparently to wait until the guards changed shifts and attempt to get out of the building at that time, but when the guards John Pearson and James Hatcher arrived on the scene to return another prisoner, Clyde Gunn, who had just made an appearance in Criminal Court, Lewis hit Hatcher on the face with a length of chain but Pearson escaped and gave the alarm."

The trial court stated:

> "But neither one of the articles say nothing [*sic*] where Gunn had any activity in the escape, does it?"

To which counsel for the defendant answered:

> "No, it does not exclusively say that, Your Honor. I submit, however, that the mention of his name in the [*sic*] connection with these articles is prejudicial."

The trial court then interrogated separately each of the jurors under oath as well as the deputy sheriff who was in charge of the jury. Only three of the jurors had read the articles and had noticed defendant's name, but commented that the articles only stated that defendant was in the custody of two guards and was being returned from the courtroom to the jail. These jurors, together with those jurors who had not read the articles, stated that they were not prejudiced against defendant and could give a just verdict.

The trial court denied defendant's motion for a mistrial, saying there was nothing in the articles that would indicate that defendant was in any way involved in an attempted escape; and that he was satisfied from the interrogation of the jurors and that testimony of the bailiff under oath that "they are not prejudiced against the defendant."

■■ The law is clear that a defendant has the right to a fair and impartial trial, free of the influences of prejudicial publicity on the jurors. (*Sheppard v. Maxwell*, 384 U.S. 333, 16 L.Ed.2d 600, 86 S.Ct. 1507; *People v. Speck*, 41 Ill.2d 177, 242 N.E.2d 208.) However, the mere mention of the name of defendant in the news media during the course of his trial does not automatically establish prejudice to him. It is necessary

that a showing be made, not only that the articles in question have come to the attention of the jury, but also that at least some of the jurors have been influenced or prejudiced to an extent where they cannot any longer be fair and impartial triers of the fact. (*People v. Torres,* 54 Ill.2d 384, 390, 297 N.E.2d 142.) The procedure followed by the trial court in the case at bar is analogous to that approved in *People v. Pisarski,* 6 Ill.App.3d 235, 285 N.E.2d 551, and *People v. Lampson,* 6 Ill.App.3d 1099, 286 N.E.2d 358, where it was held that the trial court did not abuse its discretion in refusing to grant the defendant's motion for a mistrial grounded on allegedly prejudicial newspaper articles.

■■ It is clear that in the case at bar the trial judge did not abuse his discretion in denying defendant's motion for a mistrial. Each of the jurors was separately interrogated under oath and those who had read the articles not only stated that they were not prejudiced by them, but further stated that, as far as the escape was concerned, they felt it was clear that defendant was not involved. The newspaper articles clearly show that defendant was in no sense a part of the escape plot. The trial court made certain that defendant was not prejudiced by the newspaper articles and, therefore, it was not error to deny defendant's motion for a mistrial.

■■■ Defendant also argues it was error for the State not to delete from the defendant's written statement that he and Gregory Taylor stole a car about 10 P.M. on 22 June 1967, prior to the incident in which Willie Butler was killed. This portion of defendant's statement is directly contrary to defendant's testimony on the trial when he denied that he had been with Gregory Taylor on 22 or 23 June 1967; and that he did not "attempt to rob Jessie Smith and others on 45th and Wentworth" or River Lee Bully. At the trial, defendant testified that he worked at Swift Lamb Sales until about 3:30 P.M. on 22 June 1967 and then went home; that about 11 P.M. he went to a park where he played basketball; and that he left the park with Palmer Grimes about 12:30 A.M. on 23 June 1967. It is the law that evidence relative to the main factual issue which serves to place the defendant in proximity to the time and place of the offense and which tends to prove design, motion or knowledge, is admissible as an exception to the general exclusion rule barring evidence of other offenses. (*People v. Manzella,* 56 Ill.2d 187, 306 N.E.2d 16.) The recitation in the written statement of defendant to the effect that, about 10 P.M. on 22 June 1967, he and Gregory Taylor had stolen an automobile and had driven it around for about two hours and had then parked it on 45th Street near Princeton, served to place defendant in close proximity to the time and place of the offense and, therefore, the

State was not required to delete these facts from defendant's written statement. *People v. Maldonado,* 3 Ill.App.3d 216, 222-223, 278 N.E.2d 225.

■■ Furthermore, the evidence in the case at bar overwhelmingly showed defendant guilty of the murder of Willie Butler. He was positively identified and the jury, in finding him guilty, could not have possibly been influenced to an extent warranting reversal by the fact that defendant stated that he and Gregory Taylor had stolen an automobile. *People v. Manzella,* 56 Ill.2d 187, 306 N.E.2d 16.

■■ Defendant further argues that he was denied equal protection of the law in that he, as a male of the age of 17 years at the time of the offense, had to be treated as an adult, whereas if he had been a female of the same age he could have been treated as a juvenile offender. At the time the offense was committed the Juvenile Court Act applied to males under the age of 17 and females under the age of 18. (Ill. Rev. Stat. 1967, ch. 37, par. 702—7), and the Illinois Constitution of 1870 was in effect. Hence, *People v. McCalvin* (1973), 55 Ill.2d 161, 302 N.E.2d 342, is the controlling authority in which the same contention as that advanced here was rejected. We note in passing that, even under the Illinois Constitution of 1970, the result (*i.e.,* the *holding* that defendant had not been denied equal protection of the law) would be the same. *People v. Ellis* (1974), 57 Ill.2d 127, 311 N.E.2d 98. It was not error to try defendant as an adult.

The judgment (appeal number 59220) should be affirmed.

## II

In his post-conviction petition defendant alleged that he was denied counsel at the preliminary hearing; that he was denied the right to be confronted with the witnesses against him; that he was not advised of his constitutional right to have counsel attend the coroner's inquest; that he received inadequate representation by court-appointed counsel; and that he was not advised of his right to appeal. However, the only issue argued on appeal from the dismissal of the post-conviction petition is that the caption of the report of compliance and the report of proceedings of the hearing on the post-conviction petition includes Indictment No. 67-2725, when no petition was filed as to that indictment. The State concedes that Indictment No. 67-2725 is not invloved in the present appeal; and that defendant should not be "precluded from filing a post-conviction petition as to Indictment No. 67-2725."

■■ From a reading of the record it is apparent that Indictment No. 67-2725 was not involved in the post-conviction petition and that the court reporter committed a typographical error when she included In-

dictment No. 67-2725 as a part of the caption of the report of compliance and the report of proceedings on the hearing of the post-conviction petition. Thet courts have held that a typographical or clerical error is a formal, rather than a substantive defect, which does not violate any constitutional right of the defendant. *People v. Parr* (1970), 130 Ill.App. 2d 212, 220, 264 N.E.2d 850; *People v. Bates* (1973), 9 Ill.App.3d 882, 890, 293 N.E.2d 358.

■■ In light of the foregoing, the judgment of the trial court dismissing defendant's post-conviction petition is affirmed with the explanatory holding that the post-conviction petition, the dismissal of which is hereby affirmed, related solely to the matters involved in Indictment No. 67-2713, and not at all to matters involved in Indictment No. 67-2725.

*Judgments in case Nos. 59220 and 57431 affirmed.*

STAMOS and DOWNING, JJ., concur.