STATE OF WEST VIRGINIA

*v.*

DONALD SHELTON WILLIAMS

(No. 13569)

Decided December 21, 1976.

*Anderson & Sines, F. Alfred Sines, Jr.* for plaintiff-in-error.

*Chauncey H. Browning,* Attorney General, *Fredric J. George,* Assistant Attorney General, for defendant-in-error.

BERRY, CHIEF JUSTICE:

The appellant, Donald Shelton Williams, was tried, found guilty and convicted in the Circuit Court of Raleigh County of the offense of transferring lysergic acid diethylamide (commonly referred to as LSD), in violation of the West Virginia Controlled Substances Act. The appellant now assails his conviction on the ground that it was tainted by newspaper publicity during the course of his trial.

The initial indictments against the appellant, returned during the September, 1972 term of the Circuit Court of Raleigh County, were dismissed on motion by the State. Thereafter, the defendant was reindicted and tried in the Circuit Court of Raleigh County on a charge of selling and transferring LSD. This trial resulted in a hung jury. At the end of a two-day trial in December, 1973, the jury was charged, and about five-thirty p.m., retired to deliberate its verdict. After about an hour, no verdict having been reached by the jury, the court was adjourned and the jury was released until the following morning. At the time, the court cautioned the jurors not to read any newspaper articles concerning the case.

At nine o'clock the following morning, the jury resumed its deliberations. At ten-twenty, the jury announced that it had reached a verdict. It was the decision of the jury that the defendant was guilty of the offense as charged in the indictment.

Immediately upon the announcement of the jury's verdict, counsel for the appellant drew the court's attention to an article which had appeared in the morning newspaper, the text of which is as follows:

### "YOUTH HELD FOR LSD SALE"

"A 17-year-old Glen White youth was arrested at 5:30 p.m. Monday for possession and sale of LSD as he left the Raleigh County courthouse after attending the trial of a Crow man accused of the transfer of LSD.

"According to Patrolman Daniel Moore, who along with Patrolmen Martin Durham and Everett Fink made the arrest, the youth was named on a warrant issued by Magistrate Lorena Wallace. The warrant alleges that he sold a small quantity of the drug to an informant on the nights of Oct. 12 and 13 in the general area of the courthouse.

"The youth was attending the trial of Don Shelton Williams of Crow. He was subsequently lodged in the juvenile section of the jail."

Counsel then moved the court to individually poll the jury to determine if any of the members had read the article and, if so, whether it had influenced the verdict. The trial court granted the motion and recalled the jury to inquire about the article. On questioning, it was determined that one member of the jury, the foreman, had read the article and had advised the other members of the jury of its contents. In addition, the foreman apparently advised all or most of the jurors that the person to whom the article referred was present in the courtroom during the trial. In response to direct questioning by the court, all jurors stated that the knowledge of the article had no bearing or influence on them in arriving at their verdict, although one juror responded, "I don't think so" when initially asked the question. It developed on further inquiry that the jury was divided 7 to 5 (apparently for conviction) at the close of deliberations on the previous day. Concomitantly, seven jurors stated that they had made up their minds on the previous day. Included in this group was the foreman.

During the conduct of the jury inquiry, an exchange occurred between the court and counsel for the defendant, out of the presence of the jury, during which time counsel advised the court that the person referred to in the news story had been seated with the wife of the defendant during the trial. Counsel requested the court to ask the members of the jury if they had been made aware of the presence and location of the person. The court then asked the jury if, during the conversation the foreman had with the other members of the panel, the foreman had stated where the person arrested had sat in the courtroom. It was in response to this question that the jurors indicated that the foreman had advised that the person was seated in the courtroom. The court refused to specifically ask if any of the jurors knew that the person arrested was seated with the defendant's wife during the course of the trial.

As a result of the inquiry, the court concluded that there was no prejudice to the defendant and accepted the jury's verdict.

The basis of the challenge to the defendant's conviction, as it was articulated in the argument and brief in this appeal, related solely to the alleged prejudicial effect of the jury's exposure to newspaper publicity during trial. It is asserted that the trial court erred in failing to sufficiently interrogate the jury about the article in order to properly ascertain the effect of the publicity and that the trial court erred in failing to grant a new trial based on the disclosures following the inquiry which was made.

We start with the fundamental proposition that the influence of pretrial publicity or publicity during trial may be of such a nature as to deprive a defendant in criminal proceedings of a fair trial. We said, in the syllabus point adjudicated in *State v. Barille*, 111 W. Va. 567, 163 S.E. 49 (1932) that:

> "It is improper for the jurors to read any newspaper articles discussing the case on trial. If the articles read are likely to mislead or improperly affect their minds, the impropriety may constitute reversible error.

This is a summary statement of the law in West Virginia governing such matters.

There are no hard and fast rules to be followed in making the determination of whether newspaper articles read by a jury or called to its attention constitute grounds for a new trial. It is well established that a trial court is vested with discretion in making the initial determination as to whether or not newspaper articles or other publicity brought to the attention of the jury in the trial of a case results in prejudice. *Holt v. United States*, 218 U.S. 245, 54 L. Ed 1021, 31 S. Ct. 2 (1910); *U. S. v. Pomponio*, 517 F.2d 460 (4th Cir. 1975); *U. S. v. Armocida*, 515 F.2d 29 (3rd Cir. 1975). It has been held that some newspaper articles or publicity to which jurors have been exposed are in and of themselves prejudicial. In other instances, where the contents of articles are not per se or inherently prejudicial, an inquiry is mandated in order to ascertain whether the publicity

may have effectively prejudiced the jury in its deliberation. However, each case must turn on its individual circumstances, and the trial court or appellate court must weigh such factors as the content and context of the article, the manner in which publicity is brought to the attention of the jury, the strength or weakness of the case against the defendant and such other factors as may bear on the influence of publicity on the jury's deliberative process.

In determining its course of conduct and the ultimate disposition of any challenge to a verdict based on the jury's exposure to news coverage during trial, the trial court must first determine if there is reason to question the jurors, and second, based on its inquiry, whether there is cause to grant a new trial. Modern reasoning indicates that the trial court is obligated to conduct an inquiry if there is any *possibility* of prejudice. This rule is articulated in § 3.5(f) of the American Bar Association's Standards Relating to Fair Trial and Free Press as follows:

> "If it is determined that material disseminated during the trial raises serious questions of *possible prejudice*, the court may on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material." [Emphasis supplied]

If the Court finds, on the basis of competent evidence developed during its questioning of trial jurors, that a substantial likelihood exists that the verdict was influenced by the jury's exposure to newspaper articles or other media reports, then it must grant a new trial. Thus, the defendant does not have to affirmatively show that there was actual prejudice resulting from the contents of the newspaper article and the jury's exposure to it, but rather that there was probable prejudice. *See, Sheppard v. Maxwell*, 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507 (1966); *Estes v. Texas*, 381 U.S. 532, 14 L. Ed. 2d 543, 85 S. Ct. 1628 (1965); *U. S. v. Hankish*, 502 F.2d 71 (4th Cir 1974); *Stouffer v. Pennsylvania*, 374 F. Supp. 702 (M.D. Pa. 1974); *Commonwealth v. Hanscomb*, ＿＿ Mass.

——, 328 N.E.2d 880 (1975); *State v. Knapp*, 14 Wash. App. 101, 540 P.2d 898 (1975).

Turning to the facts of the present case, the Court is initially confronted with the assertion by the State that the defendant could not have been prejudiced by the article in question inasmuch as it did not deal with him but with another person. It is true that the person arrested was not identified in the article, but two references were made to the defendant and placed the person arrested in the courtroom during the defendant's trial. Further, the person arrested was seated with the wife of the defendant during the course of the trial and, although jurors were not questioned on this matter by the court when polled, if this association were known by the jury it may well have added to the impact of the news article. It should also be noted that the person in question was arrested while leaving the courthouse and was charged with an offense identical to that for which the defendant was being tried.

It is generally held that prejudice may result to a defendant by virtue of the jury's exposure to news articles, even though such articles do not deal directly with him. *State v. Robinson*, 20 W. Va. 713 (1882). *See also, U.S. v. Hankish, supra; Margoles v. U. S.*, 407 F.2d 727 (7th Cir. 1969); *People v. Gunn*, 21 Ill. App.3d 233, 315 N.E.2d 186 (1974); *Worcester Telegram & Gazette, Inc. v. Commonwealth*, 354 Mass. 578, 238 N.E.2d 861 (1968). In *State v. Robinson, supra*, this court set aside a jury verdict because the jury was permitted to read newspaper articles during the trial which, although unrelated to the defendant, were held to be prejudicial because they dealt disparagingly with a defense similar to that raised by the defendant. It is apparent that the content and context of the news story involved here was of such a nature as to give rise to the possibility of prejudice to the defendant when it was brought to the attention of the jury.

Upon examining all of the evidence developed below, with particular reference to the post-trial inquiry by the

trial court, we are of the opinion that the defendant has demonstrated a substantial probability that the verdict against him was influenced by the exposure of the members of the jury to the newspaper article during the course of his trial. We believe it to be of considerable importance that the newspaper report was brought to the attention of the jury by its foreman, who was, in all probability, selected because of his statute and the respect the other members of the jury had for him. In this regard, the foreman committed a double indiscretion. In the first place, he should not have read the article after having been admonished not to do so by the trial court; and second, he should not have compounded his violation of the court's instruction by advising the other members of the jury of the article's contents. This conduct by the foreman is most significant in view of the fact that he had made up his mind that the defendant was guilty. We also attribute particular significance to other factors, such as the apparent close relationship between the defendant and the person referred to in the news article, the fact that this was the second trial of the defendant for the offense charged, the first trial having resulted in a hung jury, the conflicting evidence on the defendant's culpability and the time sequence involved in the jury's reaching its verdict. All of these factors in combination cast sufficient doubt on the integrity of the jury's deliberative process to require a new trial.

The State seeks to justify the trial court's refusal to grant a new trial on the fact that all jurors, in response to direct questioning, stated that the news article had not influenced their verdict. The trial court is charged with ascertaining in the first instance whether there is bias or prejudice on the part of the juror and, although the opinion of a juror is entitled to consideration, it should not be taken as conclusive. In *Marshall v. United States*, 360 U.S. 310, 3 L. Ed. 2d 1250, 79 St. Ct. 1171 (1959), the Supreme Court of the United States reversed the defendant's conviction because jurors had read newspaper articles containing defamatory matters even

though jurors had stated when questioned by the trial court that they would not be influenced by the articles. The case stands squarely for the proposition that a trial court must inquire beyond a simple and direct questioning of a juror as to whether he can decide a case fairly and impartially having read news articles related to the trial of a case. In many instances, jurors may not be sufficient judges of their own bias when they have been exposed to extrajudicial material during the trial of a case. *Commonwealth v. Hanscomb, supra; State v. Skinner*, 108 Ariz. 553, 503 P.2d 381 (1972). Thus, this Court has previously stated that specific questions should be asked in order to determine whether a juror, even without his own knowledge, may be biased or prejudiced. *State v. Pendry,* ___ W. Va. ___, 227 S.E.2d 210 (1976).

For the reason enunciated herein, the verdict of the jury is set aside, the judgment of the Circuit Court of Raleigh County is reversed, and the defendant is granted a new trial.

*Judgment reversed; new trial granted.*