359 S.E.2d 566

**STATE of West Virginia**

v.

**Geneive NIXON.**

**No. 17284.**

Supreme Court of Appeals of West Virginia.

July 15, 1987.

Gayle Fidler, Asst. Atty. Gen., Charleston, W.Va., for appellant.

Pat R. Hamilton, Kevin B. Burgess, Oak Hill, W.Va., for appellee.

McGRAW, Chief Justice:

This is an appeal by Geneive Nixon from a jury verdict in the Circuit Court of Fayette County finding her guilty of first degree murder and from the circuit court's denial of her motion to set aside the jury verdict and grant a new trial. The appellant makes numerous assignments of error, all of which we have carefully considered. Having found no reversible error, however, we affirm the appellant's conviction.

The appellant was indicted under West Virginia Code § 61–2–1 (1984 Replacement Vol.) for the murder of Kenneth Nixon, her husband. Indicted along with her were Barbara Meade, her stepdaughter, and George (Rusty) Clark, a friend of Meade's. Their cases were severed for trial. The appellant's first trial resulted in a hung jury. In the second trial, the jury returned a guilty verdict, but made a recommendation of mercy.

The prosecution's evidence showed that the Nixon marriage was at times stormy due at least in part to the husband's prolonged absences from home necessitated by his career as a merchant marine and to both the appellant's and her husband's problem drinking. Several witnesses testified that the appellant had repeatedly wished her husband dead and had sought their help in obtaining drugs to kill him with. On at least two of those occasions Meade had been present.

On May 7, 1982, the appellant, her husband, Meade, and Clark all had dinner together at the Nixon home. After dinner, the appellant stayed home to baby-sit while the other three went to a local bar. The trio stayed at the bar for about forty-five minutes and then left together with the victim being helped outside by Clark. A witness saw Clark drive away from the bar in the victim's pick-up truck, followed by someone driving Clark's car.

The victim's body was discovered the next day on Layland Mountain in Fayette County. He was seated on the passenger's side of his truck and had been killed by a shot to the head from a .410 gauge shotgun. There was no sign of a struggle and over a thousand dollars in cash was found on the body or in the truck. The autopsy revealed that the victim was not drunk, but had a high level of the drug doxepin in his system. Evidence at trial showed that Meade had received five prescriptions for doxepin in 1980 and 1981.

When they were questioned the appellant, Meade, and Clark gave the same story to the police: the victim went to the bar after the appellant or Meade told him he might find one of his granddaughters there; he got drunk at the bar and had to be helped to his truck; he refused to let Clark drive and insisted that he was going to go visit Michelle Hightower, another granddaughter; Meade and Clark returned to the appellant's home some time after 12:30 a.m.; around 1:30 a.m. the Hightowers arrived at the appellant's home, but none of the three defendants thought to tell them that the victim was planning on visiting them; the first they knew of the victim's death was when the police arrived the next afternoon.

After the close of evidence, in a scene reminiscent of Perry Mason, Clark's sister, who had already testified, came forward on her own accord with information regarding Clark's possession of a sawed-off shotgun like the one used in the murder. After extended *in camera* discussion, the circuit court allowed the prosecution to reopen its case to present testimony from Roy King, who said he had given a .410 sawed-off shotgun to Clark in Meade's presence a week or two before the murder.

## I.

▉ The first group of the appellant's assignments of error involves matters concerning the jury. She contends the circuit court erred in refusing to strike a juror for cause, in allowing the prosecution to inquire of the jurors whether they could return a verdict resulting in life imprison-

ment, and in refusing to grant a mistrial after some of the jurors were exposed to publicity about the trial.

During the voir dire, defense counsel recognized a member of the jury panel as the opposing party in an ongoing domestic relations case in which he was an attorney. When this matter was pointed out to the trial judge, he thoroughly questioned the potential juror *in camera* and refused to exclude the juror for cause. The appellant does not contend that there was any showing of bias or prejudice on the part of the potential juror. Instead, the appellant would have us rule that the juror should have been subject to per se disqualification.

The right of a criminal defendant to trial by an impartial, objective jury is fundamental and is protected by both the state and federal constitutions. Syl. Pt. 4, *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981); *see State v. McMillion*, 104 W.Va. 1, 138 S.E. 732 (1927). West Virginia Code §§ 42-1-2 (1981 Replacement Vol.) and 56-6-12 (1966) detail reasons why a juror shall be disqualified per se, none of which is applicable here. The common law grounds for per se disqualification were set out in *State v. Riley*, 151 W.Va. 364, 383, 151 S.E.2d 308, 320 (1966). No established common law ground is applicable in this case, and we decline the appellant's invitation to expand the common law grounds for disqualification.

The initial determination of whether there is bias or prejudice on the part of a juror rests with the trial court. Syl. Pt. 5, *State v. Williams*, 160 W.Va. 19, 230 S.E.2d 742 (1976) (*Williams I*). "The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court." Syl. Pt. 6, *State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32 (1983) (quoting Syl. Pt. 4, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199, *cert. denied*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983)). There was no showing of disqualifying bias or prejudice on the part of the challenged juror, and the circuit court did not abuse its discretion by declining to exclude him for

cause. *See Audia,* 171 W.Va. at 574, 301 S.E.2d at 206.

■ The appellant also alleges error in permitting the prosecution to question the jury panel regarding the potential sentence which would result from a conviction. Our consideration of this issue is guided by *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983) (*Williams II*). While we warned in *Williams II* that counsel may not use the *voir dire* to suggest a verdict or elicit a commitment from the jury, there is no evidence of such impropriety in the prosecution's questioning in this case. In fact, the jury eventually returned a verdict recommending mercy, showing that the jury understood and exercised its discretion in this matter.

■ The appellant's final contention with respect to the jury is that the trial court erred in refusing to grant a mistrial after some of the jurors were exposed to publicity about the trial. Following the third day of trial, the circuit clerk was interviewed on a local television station. The clerk stated that this was the appellant's second trial, that the trial would be a long one, with some fifty defense witnesses subpoenaed, that the penalty on a finding of guilt would be a life sentence, and that the prosecution would try to prove the motive was a rather large insurance policy.

While it is true that the influence of publicity may be of such a nature as to require a mistrial, there are no hard and fast rules to be followed in making such a determination. *Williams I,* 160 W.Va. 19, 230 S.E.2d 742. Each case turns on its individual circumstances such as the content and context of the publicity and how the jury is exposed to the publicity. *Id.* "If it is determined that publicity disseminated by the media during trial raises serious questions of possible prejudice, the court may on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material." Syl. Pt. 5, *Williams II,* 172 W.Va. 295, 305 S.E.2d 251. In determining if the jury's exposure to publicity resulted in probable prejudice, the trial court must examine all the circumstances and exercise its discretion and not simply rely on the jurors' avowals of impartiality. *Williams I,* 160 W.Va. at 26–27, 230 S.E.2d at 747.

In this case, the circuit court viewed the television interview, heard the arguments of counsel, and polled the jurors in detail. After examining all of the circumstances, the trial court denied the motion for a mistrial. Having carefully examined the record, we cannot say the circuit court abused its discretion in reaching its decision. Many of the comments in the interview had already been brought out in open court and no juror said anything during *voir dire* which indicated any probability of prejudice against the defendant. We strongly disapprove, however, of the circuit clerk's discussion with the media of any matters of which the jury had not been properly informed in open court. The clerk is an officer of the court and should refrain from public comment regarding proceedings currently pending in court. West Virginia Judicial Code of Ethics Canon 3A(6) (1976).

### II.

The remainder of the appellant's assignments of error involve rulings by the circuit court regarding the admission of evidence. We find it necessary to discuss two of her contentions of error: the admission of testimony regarding statements made by codefendants, and the reopening of evidence to allow King's testimony regarding the shotgun.*

---

* The appellant's other assignments of error involve the following: (1) the mentioning of an unspecified confession by a witness; (2) the admission of a photograph of the body of the victim in the truck and a guest list from the bar which the victim visited on the night of his death; (3) the introduction of Meade's medical records; (4) the admission of a letter identified as being from the victim; (5) the failure of the circuit court to give a cautionary instruction in admitting the prior written statement of a witness for impeachment purposes; and (6) the refusal of the trial court to allow in a prior written statement of a defense witness. We have thoroughly reviewed the record regarding each of these contentions and find no reversible

■ The appellant asserts that the trial court erred in permitting state police witnesses to testify regarding certain statements made by defendants Meade and Clark prior to the establishment of a prima facie case of conspiracy. The appellant further asserts that no such prima facie case was ever made out by the prosecution. The order of evidence and the time of its introduction are, of course, matters within the circuit court's discretion. Syl. Pt. 3, *State v. Chaffin*, 156 W.Va. 264, 192 S.E.2d 728 (1972). We have held that the trial court may conditionally admit a coconspirator's statement subject to the laying of a proper foundation. *State v. Fairchild*, 171 W.Va. 137, 144–45, 298 S.E.2d 110, 117–18 (1982). The quality of the independent evidence necessary to serve as a foundation showing a conspiracy has been described by other courts as ranging from any competent evidence through a reasonable inference to a preponderance of the evidence. *Id.*, 171 W.Va. at 145, 298 S.E.2d at 118. Here, as in *Fairchild*, the prosecution presented sufficient independent evidence of a conspiracy to meet any of those standards.

The appellant had made repeated public statements wishing her husband dead and referring to his insurance policies. She had, on at least three occasions, offered money to individuals to obtain drugs with which to kill her husband and Meade was present during at least two of those conversations. The appellant falsely led the victim to believe that one of his granddaughters might be at the local bar on the night of his murder. She neglected to tell the Hightowers that the victim was supposedly trying to visit them that night, but she did tell the police the next day that he had insisted on driving himself to visit the Hightowers after leaving the bar. She also told the police that Clark had put the victim in his truck and left him in the bar's parking lot. Finally, a neighbor testified that the appellant told her the next morning that the victim had gone to Norfolk and would return on Monday, even though the appellant later told the police she didn't know anything of the victim's whereabouts.

This evidence is more than sufficient to lay a foundation for admission of the codefendants' statements to the police. Those statements were completely consistent with the appellant's statement, and her counsel was given ample opportunity to cross-examine the police officers regarding those statements. *See Id.* at 171 W.Va. at 147, 298 S.E.2d at 119–20. The circuit court did not commit reversible error in admitting the codefendants' statements.

■ Finally, the appellant contends that the trial court erred in permitting the prosecution to put on newly discovered evidence after both sides had rested their cases. The appellant's major concern is that the testimony so presented carried undue weight with the jury.

As this Court noted in *State v. Daggett*, 167 W.Va. 411, 423, 280 S.E.2d 545, 553 (1981), a trial court should only allow a case to be reopened for good cause and upon proper showing, but a trial court also has a duty not to close the case "until all the evidence offered in good faith and necessary to the ends of justice has been heard." We have repeatedly held that we will rarely reverse a trial court for the exercise of its discretion in allowing a party to reopen its case. E.g., Syl. Pt. 4, *State v. Duell*, 175 W.Va. 233, 332 S.E.2d 246 (1985); Syl. Pt. 3, *Peyatt*, 173 W.Va. 317, 315 S.E.2d 574; Syl. Pt. 4, *Daggett*, 167 W.Va. 411, 280 S.E.2d 545; Syl. Pt. 4, *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974). There has been no showing of an

error. "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." *State v. Cook*, 175 W.Va. 185, 332 S.E.2d 147 (1985) (quoting Syl. Pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955)); *see State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1984). Further,

there is no indication that any of the questioned evidence, even if the subject of erroneous rulings by the circuit court, prejudiced or harmed the defendant. "A verdict of guilty in a criminal case will not be reversed by this Court because of error committed by the trial court, unless the error is prejudicial to the accused." *State v. Pancake*, 170 W.Va. 690, 693, 296 S.E.2d 37, 40 (1982).

abuse of discretion in this case. Further, while this Court has expressed concern that a reopening of evidence be handled properly, protecting the rights of all parties, *State v. Sandler*, 175 W.Va. 572, 576, 336 S.E.2d 535, 539 (1985), here the reopening was accomplished in a fair manner, with no undue emphasis placed on the newly received evidence. The questioning of King was direct and concise, and additional testimony regarding bank accounts was received at the same time. No error was committed in allowing the prosecution to reopen its case to present relevant, newly discovered evidence.

Having considered and rejected each of the appellant's assignments of error, the judgment of the Circuit Court of Fayette County is affirmed.

Affirmed.