466 S.E.2d 507

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Cecil M. MILLER, Defendant Below, Appellant.**

**No. 22716.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 1995.

Decided Dec. 13, 1995.

Affirmed.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, for Appellee.

Lary D. Garrett, Garrett & Garrett, William H. Bean, Bean & Bean, Moorefield, for Appellant.

PER CURIAM: .

Cecil M. Miller appeals his two convictions of sexual assault in the second degree and his two convictions of sexual assault in the third degree based on a jury verdict in the Circuit Court of Pendleton County. On appeal, Mr. Miller alleges that several errors by the circuit court including the court's failure to direct a verdict of acquittal on the second degree sexual assault charges because of a lack of evidence of any coercion or intimidation of the victim and the court's imposition of consecutive sentences for the second degree sexual assault convictions. Because we find no merit in Mr. Miller's assignments of error, we affirm his convictions and his sentences.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The victim, M.A.[1], testified that the defendant had sexual intercourse with her on two occasions when she was about thirteen years old. The defendant was twenty-eight or twenty-nine years old when the alleged assaults occurred. The first assault occurred in late August 1990 or 1991, when M.A. was left alone with the defendant and George Miller (the victim's stepfather and the defendant's brother) at the victim's home. George Miller told M.A. that "Cecil [the defendant] wanted to do it." Without any discussion between M.A. and the defendant, George Miller announced in front of the defendant that he would stand watch at the front door in case M.A.'s mother or siblings returned. M.A. and the defendant then went to her mother's bedroom where they disrobed and had sexual intercourse after the defendant had M.A. get on her hands and knees on the floor.

M.A. testified that she did not want to have sexual intercourse but did so "because if I didn't, he [George Miller] would beat me." M.A. said that she had been forced by George Miller into sexual intercourse with him since she was eleven years old and that she was often beaten during these encounters.

The second assault occurred when M.A., the defendant and M.A.'s mother were riding in a car along dirt road. M.A. thought the second assault occurred in the Fall because the weather "was warm and the leaves were starting to fall off the trees." M.A. thought the second assault may have occurred the same year as the first assault but was not certain. Earlier that day George Miller had told M.A. that the defendant "wanted to make love to me." After driving some distance, the defendant stopped the car, and M.A.'s mother got out and walked down the road. M.A. said the defendant turned to her and said that "he wanted to make love to me." Thereafter the defendant and M.A. had sexual intercourse in the car. M.A. said that she did not want to have relations with the defendant but was compelled because "if I didn't ... he [George Miller] would always hit me."

The defendant denied that either assault occurred. The defendant said that although his family had contact with his brother's family, including M.A., he and George Miller, his brother, did not speak and had a poor relationship. The defendant also said that in January 1989, he moved to Braxton County, in 1990 "[r]ight before school started" he

---

1. Consistent with our practice in cases involving sensitive matters, we use the victim's initials. See *State v. Edward Charles L.*, 183 W.Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990); *Benjamin R. v. Orkin Exterminating Co., Inc.*, 182 W.Va. 615 n. 1, 390 S.E.2d 814 n. 1 (1990).

moved to Craigsville and in 1992 he and his family moved to Ohio. Except for noting that his move to Craigsville occurred in December 1990, several family members corroborated the dates of the defendant's moves.

During the March 1994 term, the grand jury of Pendleton County returned felony indictments against the defendant charging him with crimes of sexual assault in the second and third degree against M.A. The first count charged the defendant with sexual assault in the second and third degree based on a single incident that occurred on "the ____ day of ____, 1990." The second count charged the defendant with sexual assault in the second and third degree based on another single incident that occurred on "the ____ day of ____, 1991." On March 24, 1994, the circuit court denied the defendant's request to have his attorney interview M.A. On May 5, 1994, the defendant moved that the circuit court direct the State to elect which counts of the indictment it would proceed upon. At the hearing on the defendant's motion to elect, the prosecuting attorney noted that although there was some confusion about the dates, both incidents probably occurred in 1990. The State moved to amend the indictment. The circuit court also refused to amend the indictment or to dismiss the indictment because an exact date was not specified.

After a jury returned guilty verdicts on all four counts, the circuit court sentenced the defendant to serve the second degree sexual assault counts (not less that ten (10) nor more than twenty-five (25) years in the penitentiary) consecutively and to serve the third degree sexual assault counts (not less than one (1) nor more than five (5) years in the penitentiary) concurrently with each other and the second degree sexual assault sentences. In other words, the defendant must serve a minimum sentence of twenty (20) years.

## II.

## DISCUSSION

In his appeal, Mr. Miller raises several assignments of error: (1) whether the evidence of the victim's fear, coercion or intimi-

dation was sufficient to support the verdict of guilty of second degree sexual assault; (2) whether the circuit court erred in failing to grant a dismissal because the State's failure to provide the defendant with the exact dates of the alleged assaults; (3) whether the circuit court erred in failing to grant the defendant's motion for the State to elect; (4) whether the circuit court erred in not granting a mistrial because improper statements made by the prosecuting attorney; (5) whether the circuit court improperly commented upon the defendant's testimony; (6) whether the circuit court erred in failing to exclude statements made to the victim by her mother or her stepfather; (7) whether the circuit court erred in failing to allow the defendant's attorney to interview the victim; (8) whether the circuit court should have allowed an undisclosed rebuttal witness for the State to testify; and (9) whether the circuit court erred in imposing consecutive sentences for the two convictions of second degree sexual assault.

### A.

### *Sufficiency of the Evidence*

█ The defendant alleges that no evidence was presented to show that he was aware of or responsible for any of the victim's fear, coercion or intimidation, and thus, his convictions for second degree sexual assault should be reversed. Recently in *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), we discussed the criminal standard of review concerning the sufficiency of evidence. After reviewing the Supreme Court's holdings in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979) and its progeny, we noted that as an appellate court, our function was, after viewing the evidence in the light most favorable to the prosecution, to determine if any rationale trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Syl. pt. 1 of *Guthrie, supra*, states:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine

the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rationale trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

We then said that the defendant has a 'heavy burden when challenging the sufficiency of the evidence and that "a jury verdict should be set aside only when the record contains no evidence ... from which the jury could find guilt beyond a reasonable doubt." Syl. pt. 3, in part, *Guthrie.* In its entirety, Syl. pt. 3 of *Guthrie* provides:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all of the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

When we review a conviction, we "may accept any adequate evidence, including circumstantial evidence, as support for the conviction" (*State v. Guthrie,* 194 W.Va. at 668, 461 S.E.2d at 174) because circumstantial evidence " 'is intrinsically no different from testimonial evidence.' " *State v. Guthrie,* 194 W.Va. at 668, 461 S.E.2d at 174, *quoting Holland v. U.S.,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150, 166 (1954), *rehearing denied,* 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1955). Syl. pt. 2 of *State v. Guthrie* states:

There should be only one standard of proof in criminal cases and that is proof beyond a reasonable doubt. Once a proper instruction is given advising the jury as to the State's heavy burden under the guilt beyond a reasonable doubt standard, an additional instruction on circumstantial evidence is no longer required even if the State relies wholly on circumstantial evidence.

Considering that scope of review and bearing in mind that "our review is conducted from a cold appellate transcript and record ... [, and] we must assume that the jury credited all witnesses whose testimony supports the verdict" (*Guthrie,* 194 W.Va. at 670, 461 S.E.2d at 176), we look to the essential facts of the case at bar. W.Va.Code 61–8B–4(a) (1991) states, in pertinent part, that "[a] person is guilty of sexual assault in the second degree when: (1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion...." [2]

2. This assignment of error directly relates to the "forcible compulsion" requirement of W.Va. Code 61–8B–4(a). "Forcible compulsion" is not a requirement for third degree sexual assault, which obviously is why the defendant does not appeal his third degree sexual assault conviction in this assignment of error.

W.Va.Code 61–8B–5 (1984), the third degree sexual assault provision, states:

(a) A person is guilty of sexual assault in the third degree when:

(1) Such person engages in sexual intercourse or sexual intrusion with another person who is mentally defective or mentally incapacitated; or

(2) Such person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant.

(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years.

In this case, the State alleged that the defendant did not forcibly compel M.A. to have sexual intercourse; rather the forcible compulsion came from George Miller, the victim's step-father and the defendant's brother, and that the defendant was aware that this compulsion intimidated M.A., who was younger than sixteen years old into having sexual relations with the defendant, who was more than four years older than the victim.[3]

The evidence in this case shows that the jury was entitled to find: (1) The defendant had sexual intercourse with M.A. (2) The defendant knew in the first assault that George Miller was forcibly compelling M.A. because, without any discussion between M.A. and the defendant, George Miller told the defendant that he was going to watch for family members when the defendant took M.A. went to the bedroom for the assault and because M.A. testified that George Miller, who beat her to force her to have relations with him, earlier told her to perform the act. (3) The defendant knew in the second assault that George Miller, although not physically present, was forcibly compelling M.A. because of: (a) the similar nature of the two instances, (b) the details of the car trip, including the car stopping in a isolated area and the unexplained departure of M.A.'s

mother from the scene, and (c) M.A.'s testimony that George Miller told her to do it. *See infra* section II. D. discussing the admissibility of statements by co-conspirators.

Based on our review of all the evidence in the light most favorable to the prosecution, with all reasonable and credibility choices to be made in support of the jury's verdict, we find sufficient evidence to support this conviction because any rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. In this case, we find that the prosecution established beyond a reasonable doubt that the defendant was aware of the forcible compulsion by a third party, which coerced the victim. We, therefore, find the defendant's assignment of error alleging an insufficiency of evidence to support a verdict of guilty of second degree sexual assault is without merit.

B.

*Failure to Provide the Defense with Exact Dates*

The defendant's second assignment of error is that he was prejudiced because of the State failed to provide exact dates for the alleged assaults. Because of the State's failure, the defense alleges an inability "to form

---

3. On appeal, the defendant does not assert that forcible compulsion cannot arise from a person other than the person committing the sexual assault pursuant to W.Va.Code 61–8B–4 (1991). Therefore, we will not address whether or not sexual assault pursuant to W.Va.Code 61–8B–4 (1991) must be proven to have come from the defendant. · *See State v. Hottinger*, 194 W.Va. 716, 722 n. 4, 461 S.E.2d 462, 468–469 n. 4 (1995) (per curiam). "Assignment of error that are not argued in the appellant's brief may be deemed by this Court to be waived." Syl. pt. 3, *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on other grounds, O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977). The defense did not object to the following instruction given by the circuit court:

Forcible compulsion is defined as fear by a child under 16 years' of age caused by intimidation, expressed or implied, by another person four years older than the victim *and the existence of said forcible compulsion was known by the defendant.*

Under the law of the State of West Virginia, a person is deemed incapable of consent when such person is less than 16 years of age.

Before Cecil Miller can be convicted of Sexual Assault in the Second Degree, the State must over come the presumption that he is innocent and prove to the satisfaction of the jury beyond a reasonable doubt

UNDER COUNTS ONE AND THREE OF THE INDICTMENT THAT:
1. The Defendant, Cecil Miller
2. in Pendleton County, West Virginia
3. did engage in sexual intercourse
4. with [M.A.]
5. without her consent
6. and the lack of consent was the result of forcible compulsion *by George Miller and the existence of said forcible compulsion was known by the defendant.* (Emphasis added.)

In *State v. Hottinger, supra*, we noted that at least one court recognized that a defendant may be guilty of rape when the victim submits because of fear from a person other that the defendant: provided, the defendant has knowledge that the victim is submitting because of such fear. *See State v. Pierson*, 610 S.W.2d 86 (Mo. App.1980); *State v. Gray*, 497 S.W.2d 545 (Mo. App.1973).

an alibi defense because he did not know exactly what the dates [of the crimes were] with which he was being charged." The grand jury's indictment charged the first assault occurred "on or about the ___ day of ___, 1990," and the second assault occurred "on or about the ___ day of ___, 1991." On April 20, 1994, the defense filed a Motion to Elect, requesting the State to specify the dates of the assaults. The State responded by filing a motion to amend the indictment to allege that both assaults "occurred on the ___ day of ___, 1990 or 1991." At a hearing held on May 5, 1994, the State, noting the victim's tender age and the existence of "some confusion, because these events occurred several years ago", stated they had furnished the best information they had on the dates. The State also noted that "time is not of the essence in this case."

The circuit court denied the State's motion to amend the indictment and the defense's motions to elect and to dismiss. At trial, M.A. testified that the assaults occurred in either 1990 or 1991, with the first assault taking place in late August and the second sometime in the Fall. However, she could not be certain whether the assaults took place in the same or different years.

Recently in *State v. Adams,* 193 W.Va. 277, 280, 456 S.E.2d 4, 7 (1995), we noted "that a defendant has a right under the Grand Jury Clause of Section 4 of Article III of the West Virginia Constitution to be tried only on felony offenses for which a grand jury has returned an indictment." Given M.A.'s testimony concerning the dates of the incidents, we find that the grand jury indictment specifically related to the counts on which a guilty verdict was returned. In *State v. Scarberry,* 187 W.Va. 251, 255, 418 S.E.2d 361, 365 (1992), we recognized that "an immaterial variance [in the person's name who owned the stolen property] may be disregarded in the absence of prejudice to the accused;" however, in *State v. Scarberry,* we found the variance in the alleged owner's name to be material requiring a reversal. Our holding in *State v. Scarberry,* was based on *State v. Crowder,* 146 W.Va. 810, 836, 123 S.E.2d 42, 57 (1961), which noted that a "variance between the indictment and the proof is considered material only where the variance misleads the defendant in making his defense and exposes him to the danger of being put in jeopardy again for the same offense."

In this case, the State provided the defense with all the information it had concerning when the alleged assaults occurred. The information was provided in advance, and the circuit court refused to grant the defense a continuance because determining the "exact dates or even the exact years" was difficult in this case and that the defense had "just as much information at this time as the State does...." Given the circumstances of this case, we find that the indictment gave the defendant "fair notice of criminal charges to be brought against him." *State v. Adams,* 193 W.Va. at 280 n. 3, 456 S.E.2d at 7 n. 3.

Because time is not an element of the crime of sexual assault, the alleged variances concerning when the assaults occurred did not alter the substance of the charges against the defendant. In *State v. Chaffin,* 156 W.Va. 264, 268, 192 S.E.2d 728, 731 (1972) (affirming a robbery conviction in which there was a variance concerning the time of the commission of the crime), we found "[t]ime is not of the essence of the crime of armed robbery. The date does not even have to be stated in the indictment.... Proof as to time is not material where no statute of limitation is involved. (Citation omitted.)" *See also U.S. v. Kimberlin,* 18 F.3d 1156, 1158–59 (4th Cir.), *cert. denied, sub nom., Cockrell v. U.S.,* ___ U.S. ___, 114 S.Ct. 1857, 128 L.Ed.2d 480 (1994) (quoting *U.S. v. Morris,* 700 F.2d 427, 429 (1st Cir.), *cert. denied, sub nom., Graham v. U.S.,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983) ("Where a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required."); *Ronnie R. v. Trent,* 194 W.Va. 364, 371, 460 S.E.2d 499, 506 (1995) (per curiam); *State v. Hensler,* 187 W.Va. 81, 84 n. 1, 415 S.E.2d 885, 888 n. 1 (1992); W.Va.Code 62–2–10 (1923) ("No indictment or other accusation shall be quashed or deemed invalid for omitting ... the time at which the offense was committed, when time is not of the essence of the offense ...).")

Because time is not an essential element of the charged offenses, the alleged variances did not substantially alter the offenses charged, the defense was not prejudiced by any alleged variances, and the defendant was not exposed to the danger of being put in jeopardy to the same offenses, we find that the defendant's second assignment of error is without merit. We find that the circuit court did not err in denying the defense's motion to elect and to dismiss.

## C.

### *Allegations of Improper Statements*

The defendant alleges that improper statements were made by both the prosecuting attorney and the circuit court. In his opening statement, the prosecuting attorney alluded to the jury hearing from the defendant in this case. The following exchange occurred:

MR. MOORE (prosecuting attorney): Now, ladies and gentlemen, there's not going to be a great deal of evidence presented in this case, because there's [sic] two people who knows [sic] what happened in this situation—that's [M.A.], who's going to testify—

MR. BEAN (defense counsel): Objection at this point, Your Honor. he's getting into argument now.

MR. MOORE: I'm just about through.

BY THE COURT: You may proceed.

MR. MOORE: Two witnesses, ladies and gentlemen of the jury—you're going to hear [M.A.]; you're going to *hear the defendant in this case—*

MR. BEAN: Objection, Your Honor. He knows that's objectionable. He said the defendant—

BY THE COURT: Mr. Moore, is that all?

MR. MOORE: Yes—ladies and gentlemen of the jury, we believe that after you hear the evidence in this case, that you will find that there's no question beyond a rea-

sonable doubt that this defendant is guilty. Thank you. (Emphasis added.)

Thereafter the defense moved for a mistrial, which was denied by the circuit court based on its finding that any prejudice to the defendant could be cured by instructions. Immediately following the above quoted exchange and the brief bench conference concerning the motion for a mistrial, the defense in its opening statement indicated several different times that the defendant would testify.[4]

Syl. pt. 1 of *State v. Dunn,* 162 W.Va. 63, 246 S.E.2d 245 (1978), states:

A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney in his opening statement to a jury which do not clearly prejudice the accused or result in manifest injustice.

*See State v. Guthrie,* 194 W.Va. at 684, 461 S.E.2d at 190; *State v. Leadingham,* 190 W.Va. 482, 438 S.E.2d 825 (1993); *State v. Hobbs,* 178 W.Va. 128, 358 S.E.2d 212 (1987) (per curiam).

In *State v. Clark,* 170 W.Va. 224, 227, 292 S.E.2d 643, 647 (1982), we stated:

In West Virginia it has long been held that Article 3, § 5 of the West Virginia Constitution and *W.Va.Code,* 57–3–6, make it is reversible error for the prosecuting attorney to expressly comment before the jury upon the failure of the defendant to testify in his own behalf. *E.g.,* syl. pt. 1, *State v. Nuckolls,* [166 W.Va. 259], 273 S.E.2d 87 (1980); *State v. Green,* [163 W.Va. 681], 260 S.E.2d 257 (1979); *State v. Jones,* 108 W.Va. 264, 150 S.E. 728 (1929).

In *State v. Clark,* 170 W.Va. at 228, 292 S.E.2d at 648, we also examined the prosecuting attorney's remark to determine if "the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."

A similar charge with made in a habeas corpus proceeding before the Eleventh Cir-

---

**4.** The defense's opening statement began by saying in the second sentence: "I will tell you from the very beginning that he [he defendant] denies the charges that are against him right now. He has denied the charges throughout." The de-

fense, which relied on alibi witnesses, later said, "the evidence will show through my client's testimony ..." and "defendant, who will testify as to where he was in January of 1990, January of 1991 and August of 1990...."

cuit Court of Appeals in *Routly v. Singletary*, 33 F.3d 1279 (11th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2627, 132 L.Ed.2d 867 (1995). In that case, the prosecutor during *voir dire* "made repeated and direct references to Routly's 'right to take the witness stand' thereby [allegedly] insinuating to the jury that his constitutional right to remain silent, if exercised, would suggest guilt." *Routly v. Singletary*, 33 F.3d at 1290. The appeals court based on the defendant's election to testify "to exculpate himself" found no prejudice to the defendant. *Routly v. Singletary*, 33 F.3d at 1290–91.

■ In this case, the defendant also elected to testify and the record indicates that his testimony was planned before the prosecution's inappropriate comment.[5] There is no showing that the defendant was prejudiced by his testimony and the circuit court was aware of the potential problem and offered to give curative instructions, which were not needed because of the defendant's voluntary testimony. In *State v. Leadingham*, 190 W.Va. at 492, 438 S.E.2d at 835, we said that "in light of the judge's curative instruction to the jury, we cannot say that the statement of the prosecuting attorney in closing argument clearly prejudiced [the defendant] or resulted in manifest injustice. (Citation omitted.)"

■ The defendant also maintains that the circuit court improperly commented upon the defendant's testimony. The allegedly improper comment occurred when the judge was overruling an objection by the prosecution to the defendant's testimony about conflicting statements given by M.A. to the police regarding the dates of the assaults. The comment arose during the following exchange:

MR. MOORE: Your Honor, I'm going to object. This has been covered. It was asked of [M.A.] on direct examination—

MR. BEAN: Why can't I and my client, when he testifies, be allowed to present his case?

BY THE COURT: *You may proceed, but keep in mind—I believe that these questions—all this has been covered previously, has it not?*

MR. BEAN: But not by him. She had her chance to testify; he should have his chance. What three dates do they say— (Court's comment emphasized.)

In *State v. McGee*, 160 W.Va. 1, 6, 230 S.E.2d 832, 835–36 (1976), we noted:

This Court has consistently required trial judges not to intimate an opinion on any fact in issue in any manner. In criminal cases, we have frequently held that conduct of the trial judge which indicates his opinion on any material matter will result in a guilty verdict being set aside and a new trial awarded. (Citations omitted.)

■ We also give considerable latitude to the trial judge to intervene in order to conduct an orderly trial: provided such intervention does not operate to prejudice the defendant's case. Syl. pt. 8 of *State v. Massey*, 178 W.Va. 427, 359 S.E.2d 865 (1987).

"A trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case. With regard to evidence bearing on any material issue, including the credibility of witnesses, the trial judge should not intimate any opinion, as these matters are within the exclusive province of the jury." Syllabus Point 4, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979).

*See State v. Ferrell*, 186 W.Va. 307, 309–10, 412 S.E.2d 501, 503–4 (1991) (per curiam).

In this case, the trial judge's remark did not intimate his opinion concerning the weight to be given to the defendant's testimony. When the remark is viewed in context, the trial judge was simply asking how the defense's line of questioning was relevant. We note that the defense was allowed to proceed with questions and the remark did

---

5. *Routly v. Singletary* notes that a "challenged" defendant who accepts the challenge under protest and incriminates himself in some way might present "a case of constitutional infringement." *Routly v. Singletary*, 33 F.3d at 1291. But no such challenge occurred in this case and this defendant did not incriminate himself but sought to exculpate himself.

not pertain to a "material fact," which according to *W.Va.R.Evid.*, Rule 401 (1985) is "any fact that is of consequence to the determination of the action...."

## D.

### Admissibility of Statements by Co-conspirators

 The defendant also assigns error to the circuit court's failure to exclude statements made to M.A. by her mother or her stepfather.[6] The defense made a motion *in limine* to exclude statements by Martha or George Miller to M.A. The circuit court denied the motion because the "forcible compulsion, if there was any, came from George Miller and possibly even Martha Miller." During the trial, although the defense objected as hearsay to George Miller's statement in the second assault, no objection was raised to the statement in the first assault that just before the incident M.A. was told by George Miller "that Cecil [the defendant] wanted to do it."

Rule 801(d)(2) (1994) of the *W.Va.R.Evid.* provides that a "statement is not hearsay if ... [t]he statement is offered against a party and is ... (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." According to *State v. Fairchild*, 171 W.Va. 137, 144, 298 S.E.2d 110, 117 (1982), "evidence of acts or declarations of co-conspirators or co-actors is admissible only if a proper foundation, or *prima facie* case, is established.... The required foundation consists of: (1) proof of a conspiracy existing between the declarant and the defendant; and (2) proof that the act or declaration was made during and in pursuance of the conspiracy or joint enterprise.

(Citation omitted.)"[7] *See Bourjaily v. U.S.*, 483 U.S. 171, 176–81, 107 S.Ct. 2775, 2779–82, 97 L.Ed.2d 144, 153–56 (1987) (holding the *Fed.R.Evid.* 801(d)(2)(E) requires proof of the conspiracy by a preponderance of the evidence and allows consideration of the offered declaration as part of the proof of the conspiracy); *State v. Nixon*, 178 W.Va. 338, 359 S.E.2d 566, 570 (1987).

In this case, the circuit court, without considering the offered declarations, found sufficient circumstantial proof from the descriptions of both instances to conclude that a conspiracy existed. In *State v. Farley*, 192 W.Va. 247, 252, 452 S.E.2d 50, 55 (1994), we "accord[ed] the trial court's ruling [concerning the admissibility of a voluntariness of a confession] appropriate weight," and did not disturb a trial court's decision "unless it is plainly wrong or clearly against the weight of the evidence." Syl. pt. 1, in part, *State v. Farley*. *Accord* Syl. pt. 2, *State v. Stewart*, 180 W.Va. 173, 375 S.E.2d 805 (1988); Syl. pt. 7, *State v. Hickman*, 175 W.Va. 709, 338 S.E.2d 188 (1985); Syl. pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978). *See State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995).

We find that the circuit court's ruling admitting the statements as an exception to the hearsay rule was not plainly wrong or clearly against the weight of the evidence.

## E.

### Interview of Victim

The defendant alleges that the circuit court erred in failing to allow the defense to interview the victim.[8] Apparently, the defen-

---

6. On appeal, the defendant failed to cite any authority for this assignment of error and simply argued that the statements were hearsay and therefore inadmissible.

7. Because *State v. Fairchild* was decided before the codification of the *W.Va.R.Evid.*, we find it is not dispositive of any evidentiary issue embraced within the Rules. However, since its holding is not contrary to Rule 801(d), we find that *State v. Fairchild* remains as a "source of guidance." *Reed v. Wimmer*, 195 W.Va. 199, 465 S.E.2d 199 (1995).

We take this opportunity once again to remind that " '[t]he West Virginia Rules of Evidence

remain the paramount authority in determining the admissibility of evidence in circuit courts. These rules constitute more than a mere refinement of common law evidentiary rules, they are a comprehensive reformulation of them.' Syllabus Point 7, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994)." Syl. pt. 1, *Reed v. Wimmer*, *supra*.

8. Although we are only concerned with the defendant's case in this appeal, we note that a total of eight individuals were charged with second degree sexual abuse of M.A. and all eight of their lawyers, including this defendant's lawyer, wanted to interview this fifteen-year-old girl.

dant's lawyer wanted to interview M.A. to "pin her down [to] some [dates] ... to show that it would have been impossible for him [the defendant] to have been" there. After noting that M.A. would be available for cross-examination at trial, the circuit court ruled that it would not require M.A. to submit to special interviews. The circuit court, mindful of M.A.'s tender years, held an *in camera* meeting with her guardian ad litem to assure that she would not "feel in any way intimidated" to talk to the defense. Following her meeting with the circuit court, M.A. chose not to be interviewed. As part of pretrial discovery, the State provided the defense with M.A.'s statements.

On appeal, the defense acknowledges that there is no direct authority for such an interview and cites the following authority to support requiring a victim to be interviewed: (1) W.Va.Code 61–8B–14 (1986) ("the court may provide by rule for reasonable limits on the number of interviews to which a victim who is a child who is eleven years old or less must submit for law enforcement or discovery purposes"); *Burdette v. Lobban*, 174 W.Va. 120, 323 S.E.2d 601 (1984) (requiring the presence of the child's court-appointed lawyer during an interview); *State v. Delaney*, 187 W.Va. 212, 417 S.E.2d 903 (1992) (requiring a court to consider many factors in determining whether to grant examinations of a child victim).

■ Although the defense had a right to confront an adverse witness, "pretrial discovery is generally within the discretion of the trial court." *State v. Delaney*, 187 W.Va. at 215, 417 S.E.2d at 906. Syl. pt. 8 of *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199, *cert. denied*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983), states:

> Subject to certain exceptions, pretrial discovery in a criminal case is within the sound discretion of the trial court.

*See State v. Roy*, 194 W.Va. 276, 281–82, 460 S.E.2d 277, 282–83 (1995); *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989).

Rule 15(a) (1988) of the *W.Va.R.Crim.P.* discussed when a deposition of a prospective witness may be taken. Rule 15(a) provides, in pertinent part:

> Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court *may* upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition.... (Emphasis added.)

In *State v. Judy*, 179 W.Va. 734, 739, 372 S.E.2d 796, 801 (1988), we said that Rule 15 "is not designed as a discovery rule, and ... it may be invoked only under exceptional circumstances." We further noted that "'the rule contemplates a party taking the deposition *of only his own witness*, a requirement that comports with the purpose of preserving testimony.' (Emphasis added.)" *State v. Judy*, 179 W.Va. at 739, 372 S.E.2d at 802, *quoting*, *State v. Ferrell*, 174 W.Va. 697, 698–99, 329 S.E.2d 62, 64 (1985). In *State v. Judy*, we said that the "right to a deposition arises only in 'exceptional circumstances' which are 'strictly limited ... to criminal cases where the defendant's witness *is unable to attend the trial....*' [*State v. Ferrell*, 174] W.Va. at [698], 329 S.E.2d at 64. (Emphasis added.)" *State v. Judy*, 179 W.Va. at 739, 372 S.E.2d at 802.

Syl. pts. 1 and 2 of *State ex rel. Spaulding v. Watt*, 186 W.Va. 125, 411 S.E.2d 450 (1991) state:

> Rule 15 of the West Virginia Rules of Criminal Procedure permits a deposition to be compelled in a criminal case only under very limited conditions, i.e., where, due to exceptional circumstances, the deposition is necessary, in the interest of justice, to preserve the deponent's testimony for use at trial.

> Rule 15 of the West Virginia Rules of Criminal Procedure authorizes a court to order a deposition only when the witness is unavailable for trial and the deposition is needed to preserve the testimony for trial. It is to be read in conjunction with W.Va. Code, 62–3–1 (1981).

■ The authority cited by the defendant does not justify requiring a child victim to submit to an interview by defendant's counsel. Although W.Va.Code 61–8B–14 (1986) specifically applies to victims eleven years or

less, the "reasonable limits" standard section does not indicate that unreasonable limits on interviews with older child victims should be allowed. In *Burdette v. Lobban,* 174 W.Va. at 121–22, 323 S.E.2d at 603, we recognized the child victim needs "protection" by saying:

> A parent accused of sexual abuse by his minor child has a constitutional right to know of what his child accuses him in order to prepare his defense. But certainly the child victim has a concurrent right to be protected against unrestrained private examination by adverse interests. Child victims of sexual abuse doubtless have undergone a horrifying experience. For that reason it is necessary to assure the child a modicum of protection. *See* generally, Parker J., "The Rights of Child Witnesses: Is the Court a Protector or Perpetrator?" 17 *New Eng.L.J.* 3 (1982); Note, "Evidentiary Problems in Criminal Child Abuse Prosecutions," 73 *Geo.L.J.* 257 (1974).

Finally, in *State v. Delaney,* which concerned physical and psychological evaluations for seven and eight year old victims, this Court required that the party requesting the examinations "present the judge with evidence he has a compelling need or reason for the additional ... examinations." Syl. pt. 3, in part, *State v. Delaney.*

In this case, we find that the circuit court did not abuse his discretion in refusing to require M.A. to submit to an interview. The defense was able to cross-examine M.A. during trial, and during that examination, the defense failed to obtain any more specific information about dates than the State disclosed to the defense before trial.

### F.

#### *Failure to Disclose*

The defense's next assignment of error concerns the prosecution's failure to disclosed the rebuttal witness. The defense

9. On direct examination, the defendant gave the following testimony:
 Q. Where did you live in 1988?
 A. Ft. Seybert and the trailer park over in Brandywine.
 Q. When did you leave?
 A. If I'm not mistaken, it was in '89.

maintains that Rule 16 of the *W.Va. R.Crim.P.* requires such disclosure. In this case, various witnesses for the defense testified that the defendant moved from Pendleton County in late 1988 or early 1989.[9] At the close of the defense's case in chief, the prosecution called an employee of the Pendleton County Bd. of Education who testified that the defendant's children were withdrawn from Pendleton County schools on March 13, 1990. On appeal, the defendant alleges that he was prejudiced because with proper notice he could have shown through the Dept. of Human Services' records that he was living in Braxton County in March 1990 and thus removed any question concerning the veracity of him or his alibi witnesses.

Rule 16(a)(1)(C) (1985) of the *W.Va. R.Crim.P.* states, in pertinent part:

> Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody and control of the state, and which are material to the preparation of his defense or are intended for use by the state as evidence in chief at the trial, or where obtained from or belonging to the defendant.

Rule 16(c) requires that when "a party discovers additional evidence ... which is subject to discover ...," he shall promptly notify the other party ... of the additional evidence or material." If a party fails to comply with Rule 16, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Rule 16(d)(2).

The following exchange occurred in a conference between the trial judge, the prosecuting attorney and defense counsel:

> Q. You're sure it wouldn't have been in 1990? Right?
> A. I'm sure.
> Q. Did you ever live for a short period of time in 1990 or '91 in Pendleton County, West Virginia?
> A. No.

MR. BEAN: I may want to object—I want to have a conference outside of the jury so we can talk about it. I don't know enough yet of what he's talking about to—

MR. MOORE: The only thing I'm going to qualify and ask her, if she knows Cecil's—Cecil Miller's children and when they ceased to be enrolled in school in Pendleton County. That's all it is. Be about three questions.

MR. BEAN: When was that?

MR. MORE: 3/13/90. We've had two witnesses testify he left in '88, and he says '89, and now it's 90, just to show everybody gets confused—

BY THE COURT: You would be allowed to do that; objection is saved—

MR. BEAN: That's another thing he didn't disclose to us—

BY THE COURT: This is rebuttal, and things have not been disclosed to the State until today—

█ The standard for determining when non-compliance with a discovery request constitutes reversible error is stated in Syl. pt. 2 of *State ex rel. Rusen v. Hill,* 193 W.Va. 133, 454 S.E.2d 427 (1994):

> The traditional appellate standard for determining prejudice for discovery violation under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case.

*See State v. Roy,* 194 W.Va. at 281, 460 S.E.2d at 282 (listing purposes of pre-trial discovery).

Syl. pt. 2 of *State v. Gary F.,* 189 W.Va. 523, 432 S.E.2d 793 (1993), states:

> "Our traditional appellate standard for determining whether the failure to comply with court[-]ordered pretrial discovery is prejudicial is contained in Syllabus Point 2 of *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980), and is applicable to discovery under Rule 16 of the Rules of Criminal Procedure. It is summarized: The

non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case." Syl. Pt. 1, *State v. Johnson,* 179 W.Va. 619, 371 S.E.2d 340 (1988).

In *State v. Miller,* 178 W.Va. 618, 363 S.E.2d 504 (1987) (*Miller I*) [10], we set forth the steps of our inquiry by explaining that "[t]he threshold inquiry is to 'take into account the reason why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance [or recess if the trial has begun], and any other relevant circumstances.'" *State v. Miller,* 178 W.Va. at 625, 363 S.E.2d at 511, (*quoting,* 2 Charles A. Wright, *Federal Practice and Procedure* § 260 (1982) and footnote omitted.) *See,* Syl. pt. 4, *State v. Massey, supra* ("admissibility of evidence as rebuttal is within the sound discretion of the trial court, and the exercise of such discretion does not constitute ground for reversal unless it is prejudicial to the defendant").

█ Turning to the reason why the State failed to disclose its rebuttal witness, the State argues that it did not realize until after the testimony of the defense's witnesses that rebuttal testimony would be needed. According to the defense, the prejudice arose because the veracity of the defendant and his witnesses was questioned because of an inconsequential date and the defense was unable to subpoena other records. We note that at trial, the defense did not request any delay, and, only on appeal, does the defense indicate the need for additional materials. In *State v. Gary F.,* 189 W.Va. at 528, 432 S.E.2d at 798, we found that defense's failure to seek a recess or a continuance important because first, it "demonstrates an omission to attempt to remedy the alleged prejudice and second, it raises a question as to whether the Appellant was in fact surprised...."

In this case, the defense raised the issue of the defendant's residence at various times, and thus, should not have been surprised by the State's attempt to address that same issue.

10. *Miller I* concerned Michael Dean Miller who, we believe, is unrelated to the present defendant.

Given the nature of the testimony of the State's rebuttal witness and the failure of the defense to request a recess or continuance, we find that the circuit court did not abuse its discretion err in allowing the testimony of the State's rebuttal witness.

### G.

#### Impermissible Sentence

The defendant's final assignment of error concerns that imposition of consecutive sentences for the two convictions of second degree sexual assault.[11] The defendant, after comparing his sentence (twenty to fifty years) to the sentences imposed on co-defendants (one to five years) who did not request a jury trial, argues that the consecutive sentences "essentially punish ... [him] for exercising his right to a trial by jury."

 We have long held that " '[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. pt. 9, *State v. Hays*, 185 W.Va. 664, 408 S.E.2d 614 (1991). *Accord* Syl. pt. 7, *State v. Layton*, 189 W.Va. 470, 492, 432 S.E.2d 740, 762 (1993).

W.Va.Code 61–8B–4(b) (1991) provides that a person who is found guilty of second degree sexual assault "shall be imprisoned in the penitentiary not less than ten nor more than twenty-five years, or fined not less than one thousand dollars nor more than ten thousand dollars and imprisoned in the penitentiary not less than ten nor more than twenty-five years."

 The mere difference in sentences between this defendant and other defendants, who were originally charged with crimes against the same victim, is not sufficient evidence to conclude that the defendant was punished for exercising a constitutional right. The record contains no evidence that the circuit court's sentencing order impermissi-

ble sought to punish the defendant for electing to have a jury trial. Other jurisdictions have refused to find such sentence disparity as sufficient evidence of punishment of a defendant who sought a jury trial. *See Drinkwater v. State*, 73 Wis.2d 674, 678–80, 245 N.W.2d 664, 667 (1976) ("a mere disparity between a sentence imposed on a defendant who pleads guilty and on another who is convicted after trial is not enough to establish that the latter has been punished for exercising a constitutional right"); *U.S. v. Wilson*, 506 F.2d 1252, 1259–60 (7th Cir. 1974); *Williams v. State*, 631 N.E.2d 485, 488 (Ind.1994) (requiring "significant indicia that the defendant's exercise of his jury trial right may have contributed to the severity of his resulting sentence"); *State v. Layton, supra* (co-defendant's participation in the crime charged resulted in different but permissible sentences).

In this case, similar to our holding in *State v. Layton*, 189 W.Va. at 492, 432 S.E.2d at 762, we reject the final assignment of error because "the sentence imposed on the defendant was within the limits set by statute, and overall, the Court cannot conclude that there is any showing that the sentence imposed was based on some impermissible factor."

For the above stated reasons, the judgment of the Circuit Court of Pendleton County is affirmed.

Affirmed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

11. Although the defendant's brief indicated that consecutive sentences were imposed for the two convictions of third degree sexual assault, given the sentencing order, we believe that the alleged error concerned the consecutive sentences im-

posed for the two convictions of second degree sexual assault because the two convictions of third degree sexual assault were concurrent sentences. *See supra* p. 4 for the sentencing order.