STATE OF WEST VIRGINIA

**John J.,**
**Petitioner Below, Petitioner**

**vs)  No. 16-0445** (Kanawha County 15-P-258)

**Dennis Dingus, Warden,**
**Stevens Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**April 7, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John J., by counsel R. Chad Duffield, appeals the April 7, 2016, order of the Circuit Court of Kanawha County that denied his petition for post-conviction habeas corpus relief. Respondent Dennis Dingus, Warden of the Stevens Correctional Center, by counsel Gordon L. Mowen, II, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 1, 2013, a criminal complaint was filed against petitioner that charged him with sexual abuse in the first degree in violation of West Virginia Code § 61-8B-7(a).[1] The criminal complaint listed the sentence for a conviction of first degree sexual abuse as "1 to 5 years or up to $10,000 and 1 to 5 years."[2]

---

[1] West Virginia Code § 61-8B-7(a) provides that,

[a] person is guilty of sexual abuse in the first degree when: (1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion; or (2) Such person subjects another person to sexual contact who is physically helpless; or (3) Such person, being fourteen years old or more, subjects another person to sexual contact who is younger than twelve years old.

[2] West Virginia Code § 61-8B-7(b) provides that,

(continued . . .)

1

One month later, petitioner was indicted on three counts of sexual abuse in the first degree in violation of West Virginia Code § 61-8B-7(a). These crimes were alleged to have occurred during the previous "six years" (between May 2007 and May 2013), when the victim was "younger than twelve years old."[3] In May of 2007, petitioner was forty-nine years old. Pursuant to West Virginia Code § 61-8B-7(c) "the penalty for any person violating the provisions of subsection (a) of this section who is eighteen years of age or older and whose victim is younger than twelve years of age, shall be imprisoned for *not less than five nor more than twenty-five years* and fined not less than one thousand dollars nor more than five thousand dollars." Thus, petitioner's potential sentence for each count of first degree sexual abuse was five to twenty-five years in prison, and not one to five years as noted in petitioner's criminal complaint.

Following his indictment, petitioner filed an "Affidavit: Eligibility for Appointed or Public Defender Counsel." The completed affidavit contained petitioner's cell phone number. In response, the circuit court appointed trial counsel.

Prior to trial, petitioner participated in a competency evaluation. The psychologist found petitioner competent to stand trial and noted in her report that petitioner "understood the charges against him to be sexual abuse with a possible sentence of one to five years." The psychologist's evaluation was discussed at an October 2, 2013, pretrial hearing; however, petitioner's potential sentence was not mentioned. Also at the October 2, 2013, hearing, petitioner's counsel expressed concern about the indictment's failure to provide a more specific timeframe as to when petitioner's crimes allegedly occurred. The next day, the State informed trial counsel that the alleged acts occurred during the "summer of 2008." At that time, the victim was seven years old and petitioner was fifty years old.

A week prior to trial, the State offered petitioner a plea agreement, which his trial counsel urged petitioner to accept. The plea offer provided that if petitioner pled guilty to one count of sexual abuse in the third degree, a misdemeanor and a lesser-included offense of Count One, then the State would dismiss the remaining two felony counts of first degree sexual abuse. The crime of sexual abuse in the third degree carries a maximum sentence of ninety days and a maximum fine of $500. Despite the generous nature of the plea offer, petitioner refused it on the ground that he was innocent.

Petitioner's jury trial commenced on October 15, 2013. Prior to voir dire, trial counsel asked the circuit court to spread the plea offer on the record. In so doing, the circuit court stated that the potential sentence for each count in petitioner's indictment was not less than five nor

---

[a]ny person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in a state correctional facility not less than one year nor more than five years.

[3] The victim turned thirteen in the fall of 2012.

2

more than twenty-five years in prison. Petitioner claims that this was the first time he learned that his potential sentence was five to twenty-five years on each count and that he immediately asked trial counsel about the sentence discrepancy. Despite this claim, petitioner acknowledges that he told the trial court he understood his potential sentence was five to twenty-five years for each count and that he wished to proceed with trial.

At trial, the victim testified on direct examination as follows: During the summer of 2008, when she was seven years old, she awoke to find petitioner's hand down her pajama pants and on her "private part." She got up and went to the bathroom, but when she came back to bed, petitioner touched her or attempted to touch her again. Petitioner touched her outside her clothes a week or two later. She told her friend, J.J., who is petitioner's great-niece, about the abuse soon after it occurred, but did not tell anyone else because she was scared. Five years later, in 2013, she told her aunt about the abuse and then told the police. On cross-examination by petitioner's counsel, the victim stated as follows: After the alleged abuse, she went to Myrtle Beach, King's Island, a NASCAR race, and an eight-day soapbox derby with petitioner and often stayed with him in the same hotel room. She also went camping with petitioner in 2009, 2010, and 2011. Petitioner gave the victim's sister more things than he gave her and petitioner treated her sister better than he did her.

The victim's sister testified that, after the police became involved in the case, she (the sister) received a text message from petitioner in which he wrote the following:

I want you to know it never happened like [the victim] said it did. She came in the bedroom while I was asleep and got in bed and pulled her underwear to one side and had ahold of my finger and was rubbing it on herself when I woke up.

The State entered a photograph of the text message at trial, without objection from petitioner's counsel. Both the victim and her mother testified that the phone number from which the text message was sent was petitioner's phone number. A detective then testified that he was able to reach petitioner by calling that same phone number. The State then referred the detective to petitioner's "West Virginia Public Defender Services 'Affidavit: Eligibility for Appointed or Public Defender Counsel'" and asked him about the phone number found thereon. At that point, the circuit court called counsel to the bench and noted that it was "highly improper" for the State to tell the jury that petitioner had court-appointed counsel. The circuit court then precluded the State from using the affidavit. However, the State entered into evidence a heavily redacted version of the affidavit, without objection from petitioner's counsel.

The defense called only one witness, J.J., the victim's friend and petitioner's grandniece, to counter the victim's testimony that she told J.J. about the assault soon after it happened. When J.J. testified, petitioner and other members of J.J.'s family were in the courtroom. On direct, J.J. testified as follows:

DEFENSE COUNSEL: Do you have any recollection of ever having a conversation with [the victim] about something [petitioner] did to her?

J.J.: No.

3

DEFENSE COUNSEL: She never told you he put his hand in her pants.

J.J.: No.

DEFENSE COUNSEL: So you have no recollection of that whatsoever.

J.J.: No.

On cross-examination, the State attempted to impeach J.J.'s testimony, as follows:

THE STATE: Do you remember texting [the victim] about this case?

J.J.: No.

THE STATE: You don't.

J.J.: (Shakes her head side to side.)

THE STATE: But you text her on a regular basis; don't you?

J.J.: No.

THE STATE: But you have texted her before; haven't you?

J.J.: Yes.

THE STATE: In fact, [J.J.], do you remember [the victim] texting you about this case, and you said, quote, "I don't think you are a liar."

J.J.: No.

THE STATE: Do you remember when [the victim] texted you and said, "Don't you remember me telling you about it when it happened?"

J.J.: No.

THE STATE: And you texted back yes – or "Yah"?

J.J.: No.

THE STATE: You don't remember that? Okay. Also who is the defendant to you? Is he, like your uncle?

J.J.: Yes.

THE STATE: Did you come here with family?

4

J.J.: Yes.

THE STATE: And you don't want to see anything bad happen to him; do you?

J.J.: No.

On redirect, petitioner's counsel asked J.J. whether she had been telling the truth during her direct examination; J.J. answered in the affirmative. Thereafter, the defense rested and the State recalled the victim as a rebuttal witness. Through the victim, the State entered the following text message exchange between the victim and J.J., which took place about a month before petitioner's trial:

J.J.: Wtf did you lie about [petitioner]?

THE VICTIM: I didn't.

J.J.: Everyone says you are.

THE VICTIM: Well I'm not [] because if you don't remember, I even told you about it after it happened like a couple weeks later. [] But if you want to think that I'm a liar go ahead because I'm not.

J.J.: I don't think you are a liar.

THE VICTIM: Do you remember me telling you.

J.J.: Yah.

The defense then called J.J. on surrebuttal.

DEFENSE COUNSEL: So you have to tell the truth; okay? Now, the jury just saw a text message that you apparently sent to [the victim]. Can you explain that to the jury?

J.J.: Not really.

. . . .

DEFENSE COUNSEL: Well I asked you earlier on did [the victim] tell you that [petitioner] had done something bad to her?

J.J.: That was sort of the -- like, the "Yah" was sort of an "I guess." I didn't really remember anything.

DEFENSE COUNSEL: So are you saying you don't remember she told you about something?

5

J.J.: I don't remember if she told me or not.

The State then cross-examined J.J. as follows:

THE STATE: You are in a kind of tough spot; aren't you?

J.J.: Yes.

THE STATE: So when you told me with your family watching here, that you didn't send the text messages [regarding petitioner's alleged abuse], that was a lie wasn't it?

J.J.: I don't really know what to say.

THE STATE: Well, it wasn't the truth was it?

J.J.: Yeah.

THE STATE: Okay.

J.J.: I don't really remember sending them.

THE STATE: All right. But you remember now.

J.J.: Yeah.

The jury found petitioner guilty of one count of first-degree sexual abuse and acquitted him of the two remaining counts of that crime.

On October 29, 2013, petitioner filed a motion for judgment of acquittal pursuant to Rule 29(c) of the West Virginia Rules of Criminal Procedure on the ground of inconsistent jury verdicts. The circuit court denied that motion. In December of 2013, the circuit court sentenced petitioner to not less than five nor more than twenty-five years in prison. The circuit court also sentenced petitioner to fifty years of supervised release upon his release from prison and required him to register for life as a sexual offender.

Petitioner filed a direct appeal in which he argued that the jury's verdicts were internally inconsistent. We affirmed petitioner's conviction and found that,

[e]ven if appellate review of a claim of inconsistent verdicts were reviewable, it is clear from a review of the record that the verdict was not inconsistent. The victim testified and petitioner admitted in a text message that he touched her private area on one occasion. Therefore, the jury's guilty verdict as to the first count of first degree sexual abuse is not inconsistent with its acquittal on the second and third counts.

6

*State v.* [*John J.*], No. 14-0082, 2014 WL 6634483 (W.Va. Nov. 24, 2014) (memorandum decision).

Thereafter, petitioner filed a pro se petition for habeas corpus relief. The circuit court appointed habeas counsel who filed an amended petition that alleged petitioner received ineffective assistance of trial and appellate counsel; the grand jury's indictment was defective; and the State violated petitioner's privilege against self-incrimination. At a February 25, 2016, omnibus evidentiary hearing, petitioner, his trial counsel, and petitioner's brother testified. On April 7, 2016, the circuit court entered its order denying relief.

Petitioner now appeals the April 7, 2016, order.

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 376, 701 S.E.2d 97, 98 (2009).

Petitioner raises four assignments of error on appeal. Petitioner first argues that his trial counsel was ineffective because he failed to inform petitioner of his potential five to twenty-five year sentence for each count of the indictment and, as a result, petitioner turned down a very favorable plea offer. In support of this claim, petitioner highlights that the penalty listed in his criminal complaint and found in the psychologist's competency report is one to five years in prison.

We address such claims under the following standard:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 6, 459 S.E.2d 114, 117 (1995). Moreover,

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

7

*Id.* at 6–7, 459 S.E.2d at 117–18, syl. pt. 6.

When the circuit court spread the State's plea offer on the record, the following exchange occurred:

THE COURT: [Y]ou've heard [trial counsel] place the record of the offer that was made to you by the [State].

PETITIONER: Yes, sir.

THE COURT: Did he relay that offer to you?

PETITIONER: Yes, sir.

THE COURT: And you all discussed it at some length?

PETITIONER: Yes, sir.

THE COURT: And while [trial counsel] recommended it, you decided that that offer was not an offer you wished to accept –

PETITIONER: (Interposing) Yes, sir.

THE COURT: (Continuing) – is that correct? And you believe this to be in your best interests?

PETITIONER: Yes, sir.

THE COURT: You understand that there is no guarantee what happens in a jury trial.

PETITIONER: (Nods his head up and down.)

THE COURT: And in the event you are convicted of the charge before you, they carry a substantial penalty of 5 to 25 years each? Do you understand that?

PETITIONER: Yes, sir.

THE COURT: And that while there's no guarantee that I would follow the prosecution's recommendation on sentencing to time served, but the max you could receive under a misdemeanor sentence is one year. Do you understand that?

PETITIONER: Yes, sir.

At no time during this discourse did petitioner tell the circuit court that he misunderstood his potential sentence or that he believed his maximum potential sentence was one to five years, even although he had multiple opportunities to do so. Moreover, neither petitioner nor his

8

counsel asked the circuit court for any recess to discuss petitioner's potential sentence or for any delay of trial.

Following this discourse, the State placed its reasons for the plea offer on the record. Thereafter, the trial court asked whether, in light of the State's comments, petitioner had changed his position with regard to the plea offer, as follows:

THE COURT: Does that change your position in any way []?

PETITIONER: No, sir.

Thus, the trial court gave petitioner yet another opportunity to raise the issue of which he now complains, but he did not. Instead, he reaffirmed his position that he was refusing the State's plea offer. We also note that during petitioner's pre-sentence investigation and at sentencing, petitioner never mentioned any misunderstanding regarding his potential sentence, even though he raised a litany of complaints regarding trial counsel during both events.

At petitioner's omnibus hearing, petitioner testified that trial counsel never told him the potential sentence he faced if he went to trial. Petitioner also testified that, when he heard the five to twenty-five year penalty, he immediately questioned his counsel about it. Conversely, petitioner's trial counsel testified at the omnibus hearing that he had no memory of petitioner questioning his potential sentence at trial. Trial counsel also testified that, in every criminal case for more than thirty years, he has (1) obtained the latest version of the relevant statute, (2) met with each client in his office or at a jail, (3) reviewed each element of the statute with the client, and (4) explained what the State is required to prove and the penalties for the offenses charged. Trial counsel admitted, however, that he could not specifically remember going through this process with petitioner and that his records for petitioner's case were destroyed when his file room flooded.

In reviewing petitioner's and trial counsel's testimony, the habeas court found trial counsel's claim—that he "always" reviews the penalty provision of the charging statute with his clients—to be "credible." The habeas court based that finding, in part, on the trial court's discourse with petitioner regarding the rejected plea offer and on the fact that petitioner failed to raise this issue until his habeas filing. The habeas court then found that trial counsel's performance was not deficient under an objective standard of reasonableness.

Having reviewed, at length, the record on appeal and the parties' briefs to this Court, we concur with the habeas court's finding that petitioner failed to prove the first of the two *Strickland/Miller* prongs of ineffective assistance: that trial counsel's performance was deficient under an objective standard of reasonableness. Therefore, we need not address whether petitioner was prejudiced by his trial counsel's performance with regard to this assignment of error. *See* Syl. Pt. 6, State *ex rel. Bess v. Legursky*, 195 W.Va. 435, 438, 465 S.E.2d 892, 895 (1995) (providing that court need not address both prongs of *Strickland/Miller* test, but may dispose of such claim based solely on petitioner's failure to meet either prong).

9

Petitioner next argues that the habeas court clearly erred in denying relief where trial counsel (1) failed to adequately prepare for trial given that he called only one witness, J.J.; (2) failed to interview J.J. *before* trial to determine if she was believable or susceptible to cross-examination; and (3) failed to raise at trial that the police found no evidence that the text message sent to the victim's sister was sent from petitioner's phone.

We have held that, "where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W.Va. 640, 643, 203 S.E.2d 445, 449 (1974). We have also said, "[o]ne who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence." Syl. Pt. 22, *id.*

Trial counsel testified at the omnibus hearing as follows: He met with petitioner a number of times prior to trial and spent adequate time preparing for trial. He discussed calling various witnesses with petitioner, but made a strategic decision not to do so because other witnesses would have added nothing relevant or beneficial to petitioner's case. Instead, he cross-examined the State's witnesses who could testify to the positive and longstanding relationship between petitioner and the alleged victim. He believed such testimony from the State's witnesses would be more powerful than similar testimony from defense witnesses. He had won several acquittals where he relied solely on the State's witnesses as a defense. Petitioner did not suggest that J.J. be called as a witness until *after* the victim testified at trial. Petitioner's brother brought J.J. to the courthouse during trial and encouraged him to call J.J. as a witness. During a recess, he interviewed J.J. for about twenty minutes in the presence of petitioner's brother. He would not have called J.J. as a witness if believed her testimony would harm petitioner's case.

With regard to petitioner's claim that trial counsel failed to prepare adequately for trial, petitioner does not identify what more counsel could or should have done in preparation for trial. Nor does petitioner demonstrate that, if trial counsel had spent more time in preparation, the outcome at trial would have been different. As for trial counsel's strategic decision to cross-examine the State's witnesses instead of calling character witnesses during petitioner's case, such a decision was reasonable because testimony favorable to petitioner from the State's witnesses was likely more compelling than similar testimony from petitioner's character witnesses, whom the jury may have seen as biased.

As for trial counsel's decision to call J.J. as the only defense witness, he did so at petitioner's request, with petitioner's brother's support, and after he interviewed J.J. and learned her testimony could impeach the victim's testimony. The fact that J.J. may have been impeached on cross-examination does not make trial counsel's decision to call her objectively deficient.

With regard to the text message sent by petitioner to the victim's sister, trial counsel testified at the omnibus hearing as follows: Prior to trial, petitioner and his brother lied to him and said that the brother, and not petitioner, owned the phone from which the text message was sent. The brother also told trial counsel that he sent the text message to try to get the victim's sister to reveal information that would be helpful to petitioner. Based on this information, trial

10

counsel challenged the ownership of the phone at trial, instead of focusing on whether the text message had been sent from the phone. Petitioner's brother later apologized for lying about the ownership of the phone.

It is disingenuous for petitioner to question trial counsel's defense strategy regarding the phone where trial counsel based his strategy on false information provided by petitioner and his brother. Further, given the false information, it was reasonable for trial counsel to challenge the ownership of the phone. Therefore, petitioner clearly fails to prove beyond a preponderance of the evidence that trial counsel's strategy was so ineffective that no reasonably qualified defense counsel would have so acted. Accordingly, we find that the habeas court did not err in denying relief on this ground.

Petitioner's third assignment of error is that the habeas court erred in finding that his constitutional rights were violated when the State mentioned petitioner's "West Virginia Public Defender Services 'Affidavit: Eligibility for Appointed or Public Defender Counsel'" (the "affidavit") and then admitted a redacted version of the affidavit into evidence.

In this regard, the habeas court found as follows: No suggestion was made to the jury that petitioner was guilty because he completed an affidavit regarding eligibility for appointed counsel. The jury was not informed that petitioner had been granted court-appointed counsel. When the State referenced the affidavit, the trial court immediately admonished the State outside the presence of the jury. Although the affidavit was eventually published to the jury to show them the phone number found thereon, the affidavit was heavily redacted to remove any reference to court-appointed counsel. Petitioner's trial counsel did not object to the admission of the redacted affidavit. The use of the unredacted affidavit was improper; however, the State's reference to the affidavit did not warrant habeas relief because that reference did not violate petitioner's state or federal constitutional rights.

We review that State's reference to the affidavit pursuant to Syllabus Point 6 of *State v. Sugg*, 193 W. Va. 388, 393, 456 S.E.2d 469, 474 (1995), which provides as follows:

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

In applying these factors, we find that the State's single reference to the affidavit, which occurred during a two-day trial, did not mislead the jury or prejudice petitioner. Further, the State presented ample, competent proof to convict petitioner of one count of first degree sexual assault. That evidence included the victim's testimony and petitioner's e-mail to the victim's sister. Finally, the State referenced the affidavit to prove that the text message was sent from petitioner's phone and not to divert the attention of the jury to extraneous matters.

Based on this evaluation and the record before us, we concur with the habeas court's determination that petitioner's constitutional rights were not violated by the State's brief reference to the affidavit and that petitioner is not entitled to habeas relief on this ground. Accordingly, we find no error.

Petitioner's fourth and final assignment of error is that his indictment was defective and, therefore, violated his constitutional rights. Specifically, petitioner claims that, because his crimes were alleged to have occurred during a six-year window, he had the burden of constructing an alibi defense for that entire period. Petitioner also argues that the indictment was defective because, for about seven months during that six-year window, the victim was over the age of twelve. Petitioner claims that it is an essential element of the offense that the victim not be twelve years of age or order. Finally, petitioner argues that his trial counsel was ineffective for waiting until two weeks before trial to request a more definite timeframe for his alleged crimes. Petitioner claims that, as a result, he had insufficient time to develop an alibi defense for the summer of 2008.

With regard to the sufficiency of an indictment, we have held as follows:

> "Generally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syl. Pt. 2, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996).

> "'An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syl. Pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983)." Syl. Pt. 1, *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989).

> "'An indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W.Va. R.Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.' Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999)." Syl. Pt. 5, *State v. Haines*, 221 W.Va. 235, 654 S.E.2d 359 (2007).

Syl. Pts. 2, 3, and 4, *Ballard v. Dilworth*, 230 W.Va. 449, 739 S.E.2d 643 (2013).

As for the six-year window, West Virginia Code § 62-2-10 provides that an indictment will not be deemed invalid "for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense[.]" Further, this Court has explained that "'[b]ecause time is not an element of the crime of sexual assault, the alleged variances concerning when the assaults occurred [do] not alter the substance of the charges against the defendant.' *State v. Miller*, 195 W.Va. 656, 663, 466 S.E.2d 507, 514 (1995)." *State*

*v. Larry A.H.*, 230 W.Va. 709, 713, 742 S.E.2d 125, 129 (2013). Therefore, petitioner's indictment is not constitutionally defective due to the six-year window. That said, petitioner's trial counsel sought and received a significantly narrowed window of "the summer of 2013," some weeks before trial.

Regarding petitioner's argument that the indictment was defective because, for about seven months during the six-year window, the victim was over the age of twelve, the indictment does not read that the victim was less than twelve years old during the entire six-year period. Instead, the indictment informed petitioner that the State had to prove that the offense occurred within a six-year window when the victim was under the age of twelve. Moreover, in the narrowed window of "the summer of 2008," the victim—who was then seven years old—was clearly under the age of twelve. Therefore, the indictment is not defective on this ground or any other ground as it satisfies each of the *Dilworth* standards. That is, the indictment lists the crimes charged and informs petitioner that the State was required to prove that the offenses occurred within the six-year window and that he committed the offenses against the victim when she was under the age of twelve. Accordingly, we find that the habeas court did not err in finding that petitioner's indictment was constitutionally sufficient on state and federal grounds.

Finally, petitioner argues that his trial counsel was ineffective for waiting until two weeks before trial to request a more definite timeframe for his alleged crimes. Petitioner claims that, as a result of this delay, he had insufficient time to develop an alibi defense for the summer of 2008. At the omnibus hearing, trial counsel testified that petitioner never raised the issue of an alibi defense with him. Further, in petitioner's briefs to this Court, he does not point to any alibi defense he was precluded from raising at trial due to any delay of trial counsel. Hence, petitioner fails to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Miller*, 194 W.Va. at 6, 459 S.E.2d at 17 (1995). Hence, the habeas court did not err in denying relief on this ground.

Accordingly, we affirm the circuit court's April 7, 2016, order denying habeas relief.

Affirmed.

**ISSUED:** April 7, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

13